People of the State of Illinois, Plaintiff-Appellee, v. John Louis Scott, Defendant-Appellant.

Gen. No. 50,547.

First District, Third Division.

April 6, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Thomas M. Burnham, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The defendant was found guilty of rape in a nonjury trial and was sentenced to the penitentiary for a term of ten to twenty years.

His theory on appeal is that the judgment of conviction should be reversed because the indictment did not specify the nature and elements, or the time and place of the alleged offense; that the State failed to prove the use of force; that the testimony of the complaining witness

was so improbable that it was inadequate to sustain his conviction, and that the trial court erred in permitting the State to question him on the details of a prior conviction for rape.

The prosecutrix lived with her husband and four children on the eleventh floor of a nineteen-storied building in a public housing project on Chicago's near north side. She returned from shopping about 8:15 on the night of January 18, 1964, and entered the lobby of the building. There were two elevators; one stopped at the odd-numbered and the other at the even-numbered floors. A man, whom she had never seen before, was waiting at the elevators and had pressed the buttons for both of them. After a few minutes' wait the two elevators arrived about the same time. The man entered the even-numbered one and the prosecutrix the odd but before the doors closed the man jumped into the elevator for the odd-numbered floors. She pushed the button for the eleventh floor and he for the nineteenth. Near the fifth floor he pushed the emergency button and the elevator stopped. The man held a knife to her neck, warned her to be quiet and asked for her money and a kiss. They kissed twice and he searched for her money. Finding none, he said he had to have something. He told her to take off her coat. As she did so he grabbed it from her, threw it on the floor and told her to remove part of her underclothes. He said she could keep her dress on although he was used to naked women. He unzipped his pants, got on top of her and, with his knife at her neck, ordered her to put his sex organ into hers. She did this and he had an emission.

When he was through he told her to get up and put her clothes on. He said he had a gun and asked if she would like to see it pointing in her face. He instructed her to say nothing to anyone and not to get off when the elevator stopped at a floor. He pushed one button at a time until they reached the top floor and then did the same thing

112

on the way down. No one entered the elevator at the odd-numbered floors. At the ground floor he pressed the button for the eleventh floor, left her in the elevator and jumped out. As soon as the elevator reached the eleventh floor she went to the apartment of a friend who had a phone and the police were called. She then went to her own apartment and informed her husband of what had happened. The police took her to a hospital; vaginal smears were taken which showed spermatozoa.

The next evening she and her husband were in the lobby waiting with other people for the same elevator. It was crowded when it arrived at the first floor and in the rear she saw the man who had raped her. He covered his face as he came out, went to the exit and started to run. She pointed him out to her husband as he passed her. Her husband chased but did not catch him. She again called the police and later on that evening went to a police station, saw the defendant in a lineup of six men and identified him as the man who had raped her. The defendant denied the accusation.

His defense at the trial consisted of an alibi, an attack on the probability of the complainant's story and an attack on her virtue. He testified that he was in a tavern between 8:00 and 9:00 p. m. on the date of the alleged crime and his testimony in this respect was corroborated by his brother and an employee of the tavern.

The complainant testified that she and the defendant were in the elevator about twenty minutes and that during this time the emergency bell was ringing. She explained that it was not unusual for the bell to ring because children often closed the doors and played in the elevators. The defendant's sister, who lived on the fifteenth floor of the same building, testified that security officers in the project made their rounds every two hours and that in the event of trouble tenants were supposed to call the officers. Another tenant whose apartment was also on the fifteenth floor, two doors from the elevator,

113

said the same thing and added that if the emergency bell were to ring for a long time someone would call the security office. She said she was home the night of January 18th and that she did not hear the bell ring. A man who was visiting in her apartment that night said he did not hear a bell ringing. He also testified that he arrived at the building at approximately 8:30 p. m., and that the odd-numbered elevator was in service and that he rode it to the fifteenth floor.

The defendant testified that he was well acquainted with the prosecutrix, had dated her and had sexual relations with her—the last time at 1:00 p. m. the day of the alleged rape. His sister said she had seen him and the prosecutrix in bed together at her mother's apartment in November of the previous year.

The indictment which the defendant criticizes as invalid stated in pertinent part:

". . . that on January 18, 1964, at and within said County [Cook], John Louis Scott, a male person of the age of fourteen years and upwards, committed the offense of rape, in that he had sexual intercourse with . . . not his wife, by force and against her will, in violation of Chapter 38, Section 11–1, of the Illinois Revised Statutes 1963 . . . ."

The argument is that the indictment does not meet the requirements of the statute (Ill Rev Stats 1963, c 38, § 111–3(a)) which states that an indictment must contain provisions:

"3. Setting forth the nature and elements of the offense charged;

"4. Stating the time and place of the offense as definitely as can be done; . . . ."

■■ In reference to subsection 3, the defendant's contention is that the indictment is deficient because it

114

did not set forth the specific acts for which he was being prosecuted and did not allege that he used a knife to overcome the prosecutrix's will. This argument is without merit. The indictment is substantially in the language of the statute defining the offense of rape, informed the defendant with reasonable certainty of the charge against him and cited the specific statutory provision alleged to have been violated. This is sufficient. People v. Sims, 393 Ill 238, 66 NE2d 86 (1946). The State is not required to plead evidence in an indictment. People v. Meaderds, 21 Ill2d 145, 171 NE2d 638 (1961).

■ ■ In reference to subsection 4, the contention is that the indictment is deficient because the State knew, but did not allege, the address where and the time at which the offense took place. This contention is likewise without merit. This court has held that an indictment which alleges that an offense occurred on a certain date in a certain county complies with the requirements of subsection 4. People v. Petropoulos, 59 Ill App2d 298, 208 NE2d 323 (1965); People v. Zeravich, 64 Ill App2d 150, 212 NE2d 282 (1965). The Supreme Court has held likewise: People v. Petropoulos, 34 Ill2d 179, 214 NE2d 765 (1966); People v. Blanchett, 33 Ill2d 527, 212 NE2d 97 (1965).

Because the prosecutrix kissed the defendant, asked him if he was going to rape her when he said he "had to have something," removed her coat and underclothes, made no outcry, did not resist him and suffered no physical harm, the defendant asserts that there was no proof that the intercourse was against her will or was the result of the force required to constitute rape. The defendant further asserts that the prosecutrix's entire story was so improbable as to call for a reversal of his conviction because she testified that: the rape occurred on a Saturday night in an elevator of a nineteen-storied, public housing project; she was in the elevator twenty minutes; the emergency bell was ringing; no one was waiting for the

elevator at any of the floors after it had been stalled for so long, and that he returned to the building the next day.

■ There is no definite standard regarding the amount of force required to establish the offense of rape. Generally, if a woman has the use of her faculties and physical powers she must resist to the extent possible and the evidence must show that the act was against her will. Each case must rest on its own facts and it is not necessary to resist under circumstances where resistance would be futile and would endanger her life, or where she is overcome by superior strength or paralyzed by fear. People v. Smith, 32 Ill2d 88, 203 NE2d 879 (1965). The testimony of a complainant, uncorroborated by other witnesses, may be enough to sustain a rape conviction. People v. Perez, 412 Ill 425, 107 NE2d 749 (1952). In the present case the prosecutrix was trapped in an elevator and a knife was held to her neck; escape was impossible; resistance would have been useless. She had to submit or run the risk of being slashed by the knife. Her submission under these circumstances is understandable. The evidence supports the charge that the intercourse was forcible and against her will.

■ Nor is the story related by the prosecutrix so improbable that it cannot be believed. Rapes do occur in the elevators of high-rise buildings. As we shall see, the defendant himself had been convicted of such a rape. That no one responded to the bell was explained by the frequency with which the elevator was out of service. That no one was waiting on the floors where the defendant stopped the elevator may have been coincidental or may be explained by the fact that there was another elevator which stopped at the alternate floors. A person could walk down a flight of stairs and take the one which was running; a person in the lobby wishing to go to an odd-numbered floor could ride to the nearest even-numbered floor and walk one flight of stairs. There was testimony that this was done. The defendant may have been in the

building the next day because he wanted to see his sister, because of some compulsion to return to the scene of his crime, because he believed his victim was completely intimidated or because he was brazen or foolish. Whatever may have been the reason, he was there and he scurried away when he saw his victim point him out to the man accompanying her.

Moreover, the prosecutrix made complaint of the rape to two persons immediately after it took place and she made an immediate call to the police. She pointed the defendant out to her husband twenty-four hours later and again notified the police. When arrested, the defendant denied the crime but he did not tell the police that he was in a tavern at the time of the crime or that he and the prosecutrix had been intimate at other times. The evidence is not so improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt.

During his testimony the defendant volunteered the information that he had a prior conviction for rape. On cross-examination the prosecutor, over objection, was permitted to elicit the fact that the rape took place in an elevator in the same building as in the case on trial. The defendant claims that the trial court committed prejudicial error in allowing the prosecutor to question him on the details of the prior conviction.

While it is generally improper to cross-examine a defendant as to prior crimes, there are exceptions to the rule. Where a defendant has himself opened the door by testifying on direct examination about his prior conviction, it is not error to allow the prosecution to cross-examine him concerning that conviction if the examination is pertinent to an issue in the case. Accord: People v. Nastasio, 30 Ill2d 51, 195 NE2d 144 (1963). Also, evidence of prior offenses may be admissible when the evidence tends to prove any fact material to the issue on trial. People v. Bernette, 30 Ill2d 359, 197 NE2d 436 (1964). In the case at bar the defendant not only denied

committing the offense for which he was being tried, he went further and placed in issue the commission of the offense. He contended that the prosecutrix's story was unbelievable and that a rape could not have taken place under the conditions related by her. Under these circumstances it was not error for the court to allow the State to show that such a rape was possible and that the defendant himself had been found guilty of raping another woman in an elevator in the very same building.

The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.