THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES MIDDLETON, Defendant-Appellant.

First District (1st Division)   No. 59499

Opinion filed May 17, 1976.

Sam Adam, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and John F. Brennan, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

The defendant, James Middleton, was found guilty by a jury of deviate sexual assault (Ill. Rev. Stat. 1969, ch. 38, par. 11—3) and aggravated battery (Ill. Rev. Stat. 1969, ch. 38, par. 12—4(c)), and sentenced to a term of not less than 5 nor more than 10 years.

The count of the indictment charging aggravated battery alleged that on February 7, 1970, the defendant administered to the complainant by deception, for other than medical purposes, an intoxicating, stupefying, anesthetic substance. The deviate sexual assault count alleged that on the same day the defendant, by force, compelled the complainant to submit to an act of oral copulation.

Prior to trial, the defendant moved that the circuit court order a psychiatric examination of the complainant. In support of his motion the defendant asserted that on December 29, 1971, the complainant filed a lawsuit against Dr. Middleton in the circuit court of Cook County in which she alleged that she suffered from psychological problems and had expended large sums of money because of those problems. The circuit court denied the motion.

The complainant testified at the trial that she first visited Dr. Middleton on December 29, 1969, when she felt weak and developed swollen glands after donating blood. Dr. Middleton took the complainant's medical history, said he thought she had mononucleosis and gave her an injection. The complainant visited Dr. Middleton in his office nine times after the initial visit and prior to January 27, 1970, receiving an injection during each visit. On January 27, 1970, the complainant told Dr. Middleton that she had been to a hospital the previous week because of menstrual problems. Dr. Middleton told her that he would give her an internal physical after her period stopped. During this visit Dr. Middleton gave the complainant an injection that he said was streptomycin and a sedative.

The complainant testified that she went to defendant's office on February 3, 1970, received an injection and was told to undress for an internal examination. She testified that after the injection was administered, her face and the back of her neck became very hot, as defendant had predicted. In addition she felt in a stupor, drugged, dizzy, weak and with impaired vision. The internal examination lasted for 15 to 20 minutes and Dr. Middleton stopped the examination when the complainant asked if something was wrong with her. During the examination the defendant asked her in what positions she made love with her husband. After the examination, the complainant was unable to drive home.

The complainant's next and last appointment with Dr. Middleton was on February 7, 1970, when she was accompanied by a friend who waited for her while the doctor saw her. The complainant was again given an injection and told to undress for another internal physical. The complainant testified that defendant manipulated her vagina with his fingers and she started shaking all over. He told her he would not hurt her, and that she should never be afraid to have a climax. She testified that defendant then performed oral copulation on her. During the time her body was shaking, she had very little muscular control, was scared, felt physically unable to get off the examining table and could not see clearly.

The witness testified that after the injection administered on February 7, her voice became very deep, the hair on her body became considerably longer, the hair under her chin was almost half an inch long and she had no menstrual cycle in February.

The complainant testified that after leaving the defendant's office on February 7, 1970, she went to a coffee shop with the friend who had accompanied her to the doctor's office. While in the coffee shop she told her friend what happened while she was in Dr. Middleton's office. The friend testified that after the complainant left the doctor's office, the complainant was shaking a great deal and her voice was trembling.

The complainant's husband testified that he saw the complainant 2 hours after the incident; she was very nervous and her speech was slurred.

The prosecution called six women other than the complainant who had been patients of Dr. Middleton. It is not necessary to review their testimony in detail. It is sufficient to note the following:

(a) All six witnesses testified to treatment they had received from Dr. Middleton between 1968 and 1971.

(b) All six witnesses received injections from the defendant (often supposedly in treatment for anemia) the immediate results of which were weakness, dizziness, a stinging sensation, warmth and in some cases inability to move.

(c) In the case of four of these witnesses, the defendant took advantage of this weakness by manipulating them sexually, often in the course of prolonged internal examinations. The defendant told the witnesses that they should have climaxes while he manipulated them.

(d) The defendant showed a great deal of interest in the sex lives of the witnesses, especially whether they practiced oral copulation. He offered to perform it on three of the patients.

(e) Over a period of time, all six witnesses developed symptoms such as growth of facial and body hair, deepening of the voice, deterioration of the complexion, irregularity in the menstrual cycle, enlargement of the clitoris and heightening of the sex drive.

The jury was instructed that the testimony of these six patients should

be considered only on the issue of defendant's design, motive, intent and knowledge.

The witnesses for the defense included Dr. I. James Young, Dr. Ronald Rosenberg and the defendant. The defendant denied that he performed oral copulation on the complainant or that he gave her drugs for nonmedical purposes.

Dr. Young had treated the complainant at Northwest Community Hospital in Arlington Heights for injuries she suffered as a passenger in a car driven by her husband which was involved in an auto crash a few hours after the claimed sexual assault. The complainant testified that she told Dr. Young that she had been attacked. Dr. Young denied that the complainant had ever told him this. On cross-examination, Dr. Young testified that he has treated more than a thousand patients since he saw the complainant. He stated that he usually, but not invariably, takes notes of his conversations with patients involving their sex problems.

Dr. Rosenberg, an anesthesiologist, testified that no injection could cause the symptoms described by the complainant as the immediate results of her February 7 injection. On cross-examination, Dr. Rosenberg testified that a large number of drugs can cause dizziness, a weighted-down feeling and loss of feeling in muscles or extremities. He stated that scopolamine frequently caused flushness in patients. In discussing drugs which could cause paralysis without loss of consciousness, Dr. Rosenberg replied as follows to a question about a person's ability to resist after being administered such drugs: "Insofar as he could breathe he could also move all his extremities, perhaps weakly, but this would depend on the dose * * *."

The issues raised by defendant on this appeal are: Was it error to admit the testimony concerning defendant's conduct with patients other than complainant; did the trial court abuse its discretion in failing to order a psychiatric examination of the complainant; was defendant proven guilty beyond a reasonable doubt; was defendant denied a fair trial by certain comments made by the prosecutor during closing argument; did the trial court err in refusing to admit tape recordings into evidence during a hearing on defendant's post-trial motion to vacate the judgment; and, did the prosecution suppress evidence favorable to the defendant?

■■ Defendant first argues that it was error to admit the testimony of the six patients other than the complainant. The general rule is that evidence of a defendant's misconduct which is similar to the conduct constituting the alleged crime is not admissible to create an inference of guilt. However, in *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489, the Illinois Supreme Court applied an exception to the general rule under circumstances similar to those in this case. The defendant in *McDonald* was found guilty of burglary and not guilty of attempted

murder. The incident for which he was prosecuted took place on December 1, 1969. The victim and the investigating police testified concerning the details of the crime. Another witness testified that she had been similarly attacked by the defendant on December 4, 1969. Her testimony showed that the attack upon her and upon the December 1 victim were nearly identical with respect to time of day when they occurred, the way in which the intruder gained entry, the clothing the intruder wore and the manner of the attack. The court held that the testimony of the witness who was not the complainant was properly admitted to show *modus operandi*, stating:

> "It is, of course, generally true that evidence of extra-indictment offenses, that is, evidence of crimes other than the one for which the accused is being tried, is not admissible, but there are situations of exception. Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is beng tried, and evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the commission of a separate offense. (*People v. Lehman*, 5 Ill. 2d 337, 343; *People v. Palmer*, 47 Ill. 2d 289, 296; *People v. Kovacivich*, 10 Ill. App. 3d 797.) In fact it has been broadly held that evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime." (62 Ill. 2d 448, 455.)

In *People v. Lehman* (1955), 5 Ill. 2d 337, 343, 125 N.E.2d 506, evidence of extra-indictment misconduct by the defendant was properly admitted when such misconduct shared sufficient "peculiar and distinctive features" with the alleged crime to demonstrate a common design or scheme.

In this case, the testimony of the complainant and the six other patients share sufficient "peculiar and distinctive features" to demonstrate the defendant's *modus operandi* of injecting each patient with drugs causing almost identical symptoms and of taking advantage of the drugged patients' weakness by manipulating them sexually and offering to perform oral copulation. It is this *modus operandi* which constitutes the common scheme, and the evidence of a common scheme had sufficient probative value to outweigh any danger of prejudice. The striking similarity of the acts testified to lends credence to the complainant's allegations, which might otherwise seem implausible. (See *People v. Cole* (1963), 29 Ill. 2d 501, 505, 194 N.E.2d 269.) The evidence concerning the injections and their effects is relevant to the aggravated battery charge. The evidence of the weakening effect of the injections and of the defendant's sexual conduct thereafter is relevant to the deviate sexual assault charge.

Defendant's assertion that a common scheme cannot be established

through evidence of a defendant's sexual misconduct with one other than the complainant is contrary to the holdings in *People v. Carter* (1967), 38 Ill. 2d 496, 232 N.E.2d 692; *People v. Emmett* (1975), 34 Ill. App. 3d 167, 340 N.E.2d 235; *People v. Scott* (1972), 4 Ill. App. 3d 79, 280 N.E.2d 715; and *People v. Scott* (1967), 82 Ill. App. 2d 109, 227 N.E.2d 72. In the 1972 *Scott* case, where the defendant was tried for a rape committed in an elevator, evidence of a subsequent sexual crime on a nearby elevator was held admissible. The defendant attempts to distinguish *Scott* by noting that the identity of the criminal was in issue there. However, evidence of a defendant's *modus operandi* may be relevant not only to the issue of who committed a crime but also to the issue of whether a crime was committed at all. Thus, the evidence in *Scott* was used in part to disprove the defendant's claim that it was impossible for a rape to occur in the elevator of a crowded public housing project. Similarly, the evidence objected to in this case refuted the correctly anticipated defense argument that no drugs could cause the effects described by the complainant.

Two of the cases on which defendant relies have been overruled. *People v. Gibson* (1912), 255 Ill. 302, 99 N.E. 599, was overruled by *People v. Crocker* (1962), 25 Ill. 2d 52, 183 N.E.2d 161; *Baker v. People* (1883), 105 Ill. 452, was overruled by *People v. Hagenow* (1908), 236 Ill. 514, 86 N.E. 370. The other cases cited by the defendant are distinguishable because they lack the unusual *modus operandi* of the present case.

■■ We conclude that the testimony of the six witnesses was properly admitted. We note that California and Oklahoma courts, which generally exclude evidence of sex offenses between the defendant and one other than the complainant (*People v. Whalen* (1945), 70 Cal. App. 2d 142, 160 P.2d 560; *Harris v. State* (1949), 88 Okla. Crim. 422, 204 P.2d 305), have held evidence similar to that in the present case to be admissible. *People v. Ing* (1967), 65 Cal. 2d 603, 422 P.2d 590, 55 Cal. Rptr. 902; *People v. Ragen* (1968), 262 Cal. App. 2d 392, 68 Cal. Rptr. 700; *People v. Wojahn* (1959), 169 Cal. App. 2d 135, 337 P.2d 192; *Rhine v. State* (Okla. Crim. 1959), 336 P.2d 913.

■■ The defendant also contends that the trial court erred in denying his pretrial motion to order a psychiatric examination of the complainant. A defendant must present a compelling reason for a psychiatric examination of a complaining witness in a case involving a sex offense, and a denial of a motion for examination is not a ground for reversal unless the trial court abused its discretion. (*People v. Glover* (1971), 49 Ill. 2d 78, 82, 273 N.E.2d 367.) The assertion by the complainant in her civil complaint that she suffered from psychological problems is not the type

of admission which provides a compelling reason; psychological problems do not necessarily affect competency to testify. (*People v. Dentley* (1975), 31 Ill. App. 3d 679, 334 N.E.2d 774.) The trial court did not abuse its discretion in denying the defendant's motion.

Defendant next asserts that he was not proven guilty beyond a reasonable doubt. The complainant gave statements to the police and to the State Department of Education and Registration; she testified before the medical license board and the grand jury. There was thus ample foundation for impeachment if she were lying. Yet, no major contradictions in her testimony were brought forth. While there were some omissions in her prior statements, this was usually explained by the matter not having been specifically asked. Such discrepancies as existed went only to the weight to be given the testimony by the jury; they did not destroy the credibility of the witness. *People v. Henderson* (1976), 36 Ill. App. 3d 355, 368, 344 N.E.2d 239; *People v. Wright* (1972), 3 Ill. App. 3d 829, 279 N.E.2d 398.

The defendant emphasizes the failure of the complainant to complain about Dr. Middleton promptly. Under the unusual circumstances of this case—the dazed condition of the complainant, her hospitalization for an auto accident a few hours after the attack, and the natural reluctance to make a seemingly bizarre accusation against an apparently reputable physician—we cannot say that this failure is sufficient to cause reasonable doubt as to the defendant's guilt.

Defendant also relies upon the testimony of Dr. Rosenberg that no drugs could cause the symptoms experienced by the complainant immediately following her February 7 injection. However, on cross-examination Dr. Rosenberg testified that drugs could cause most of these symptoms, and that the effects of an injection on a patient's ability to resist would depend on the dose given. Dr. Rosenberg's testimony, considered in its entirety, need not have been regarded by the trier of fact as substantially strengthening the defense.

Moreover, complainant's account was corroborated by the evidence of common scheme presented by the six other patients. There was also partial corroboration through the testimony of complainant's friend and husband as to complainant's physical condition after the attack. (*People v. Griggs* (1970), 131 Ill. App. 2d 257, 266 N.E.2d 398.) They described complainant as nervous, shaking, "not making sense," having a slurred voice. While complainant's friend testified that complainant did not tell her of the deviate sexual assault, she may not have understood what the complainant was saying. A trembling, dazed woman attempting in a slurred voice to explain a deviate sexual assault might "not make sense" to a listener.

■■ What was said about rape cases in *People v. Reese* (1973), 54 Ill. 2d 51, 57-58, 294 N.E.2d 288, is equally applicable to charges involving deviate sexual assault:

> "Courts of review have a special duty of carefully examining the evidence in rape cases. [Citation.] But in doing so the court may not encroach upon the function of the trier of fact to weigh credibility and otherwise assess the evidence which was presented. [Citation.] That evidence has been conflicting will not justify a reversal of a finding by the trier of fact. [Citations.] A court of review will not set aside a finding of guilty unless the evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused."

The evidence is not so unreasonable, improbable or unsatisfactory as to create a reasonable doubt as to guilt that would justify reversal by a reviewing court. *People v. Curry* (1974), 56 Ill. 2d 162, 174, 306 N.E.2d 292; *People v. Benedik* (1974), 56 Ill. 2d 306, 310, 307 N.E.2d 382.

Defendant next urges that he was denied a fair trial because of comments made by the prosecutor during closing argument. The prosecutor referred to the defendant as a "quack." After defense counsel's objection was sustained, the prosecutor again referred to the defendant as a "quack." The objection was again sustained.

In *People v. Terrell* (1975), 62 Ill. 2d 60, 338 N.E.2d 383, the prosecutor's reference to the defendant as a "punk" and a "coward" was held not to be reversible error. The court found that the evidence supported the prosecutor's characterization. Similarly, the prosecutor's characterization of the defendant in this case, although unfortunate and unnecessary, was an inference properly drawn from the evidence that the defendant used his professional status as a physician as a pretext for sexually manipulating his patients. The defendant relies on *People v. Fort* (1958), 14 Ill. 2d 491, 153 N.E.2d 26, and *People v. Kirkendoll* (1953), 415 Ill. 404, 114 N.E.2d 459. In the former, the prosecutor's statement that the defendant was a rapist before and would always be a rapist had no basis in the evidence. In *Kirkendoll*, the prosecutor's characterization of the defendant as a "sex maniac" and "robber rapist" was unwarranted because he had no history of sexual perversion.

■■ Even if the prosecutor's characterization of defendant was error, it was not prejudicial. In *People v. Stephens* (1974), 18 Ill. App. 3d 971, 310 N.E.2d 824, the court found defendant was not denied a fair trial by prosecutorial reference to him as an "animal." Here, as in *Stephens*, the objection was sustained and the jury was instructed as to the absence of evidentiary weight in such comments. The error, if any, is therefore deemed harmless.

■■ ■ During closing argument the prosecutor also stated that defendant never denied or contradicted the testimony of the six patients other than the complainant. Defendant contends that this statement violated his right to silence under the fifth amendment to the United States Constitution. The defendant waived his right to silence by taking the stand to deny the complainant's allegations, and it was, therefore, proper to remind the jury of those aspects of the State's case which the defendant did not deny. (*Caminetti v. United States* (1917), 242 U.S. 470, 61 L. Ed. 442, 37 S. Ct. 192; *United States v. Weber* (3d Cir. 1970), 437 F.2d 327.) The cases cited by defendant prohibit prosecutorial reference to a defendant's pretrial reliance on the fifth amendment, whether or not the defendant testifies at trial. They hold that a defendant does not retroactively waive his pretrial fifth amendment rights by taking the stand at trial. But defendant has cited no cases for the quite different proposition he asserts that an accused can take the stand at trial, deny some but not all of the evidence against him, and then claim immunity from prosecutorial comment on his failure to answer the rest of the evidence during his testimony.

On February 3, 1972, the jury returned verdicts of guilty on both counts. Twenty-two days later the defendant received a telephone call from the prosecutor. This telephone call was the basis for a motion by the defendant to vacate judgment. (Ill. Rev. Stat. 1971, ch. 110, §72.) The defendant claimed the prosecutor admitted in the course of the telephone conversation that perjury had occurred during the trial, and that he knew before trial that complainant's account of events was impossible.

The prosecutor, while admitting making the call, denied the defendant's version of what he said. He stated that the purpose of the call was to persuade the defendant that he was guilty, that he needed psychiatric treatment, and that the prosecutor was not part of an alleged conspiracy against him. The prosecutor denied that any perjury occurred at the trial or that he had any information that in any way contradicted or modified any testimony at the trial. Another assistant State's attorney who also participated in the prosecution made similar denials under oath.

The trial court denied defendant's motion, holding that defendant had failed to prove by clear and convincing evidence any basis for relief under section 72 of the Illinois Civil Practice Act. Defendant contends that the court should not have reached this decision without listening to tapes he claimed to have made of the telephone conversation.

During the hearings on defendant's motion, the State sought discovery of the recordings. The defendant objected, claiming that any order to produce the tapes would force him to incriminate himself by producing evidence that he had violated the Illinois Eavesdropping Act. (Ill. Rev.

Stat. 1971, ch. 38, par. 14—2(a).) He also claimed that production of the recordings would itself be illegal under the same Act. (Ill. Rev. Stat. 1971, ch. 38, par. 14—2(b).) The defendant stated that he had no plans to introduce the tapes into evidence. Because of the defendant's objections, the trial judge ultimately denied discovery to the State, but stated on June 5, 1972, that if at a later time the defendant intended to use the tape recordings the State should be given adequate time for scientific examination of the recordings.

■■ At 5 p.m. on June 13, 1972, after a full day of testimony on defendant's section 72 motion, the defendant without notice to the court or to the State announced that he was waiving his fifth amendment rights, and that he wished to bring some tape recordings to court so that the court could listen to them that evening. The defendant never offered to submit the tapes to scientific analysis. He made an offer of proof as to the contents of the recordings but no such offer as to their genuineness. The trial judge did not abuse his discretion in rejecting the defendant's last-minute attempt to introduce evidence which was never made available to the prosecution. Illinois Supreme Court Rule 219 gives courts broad discretion in dealing with refusals to comply with discovery orders. Ill. Rev. Stat. 1971, ch. 110A, par. 219.[1]

■■ Finally, defendant argues that the prosecution violated the safeguards promulgated in *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, by suppressing the identity and statements of two doctors interviewed by the prosecution prior to trial but never called as witnesses. The prosecutor testified at the hearing on the section 72 motion that these physicians informed him that drugs found in the defendant's office would give the exact effects testified to by the complainant. The statements of the doctors could not, therefore, be favorable to the defense as required by *Brady*. On the contrary, their testimony would have directly contradicted that of the defendant's expert witness, Dr. Rosenberg, and would have been unfavorable to the defendant.

There remain to be considered two motions filed by the defendant after oral argument before this court. During the oral argument, the attorney for the State contended that the evidence of the defendant's extra-indictment misconduct was essential if the State were to avoid a directed verdict. Defendant characterizes this as "tantamount to a confession of error," and has moved for reversal without remandment. We disagree with the defendant because of our holding that the testimony of the six witnesses was properly admitted. Furthermore, we agree with the

---

[1] Supreme Court Rule 219 is applicable to civil proceedings. A proceeding to set aside a criminal conviction under section 72 of the Civil Practice Act is civil in nature. *People v. Etheridge* (1972), 8 Ill. App. 3d 235, 237, 289 N.E.2d 659.

position taken by the State in its brief (and reiterated in its answer to defendant's motion) that the testimony of the complainant was clear and convincing, and was therefore by itself sufficient to survive a motion for a directed verdict. Defendant's motion for reversal without remandment is, therefore, denied.

■■ Defendant has also moved for an order preserving the tape recording of the oral argument, and this motion is granted by a separate order being entered simultaneously with the filing of this opinion. As the State points out, arguments of counsel are not evidence, and the Illinois Supreme Court would not be bound even by an intended confession of error before this court. (*People v. Locken* (1974), 59 Ill. 2d 459, 322 N.E.2d 51.) Nevertheless, in the event of appeal, the Illinois Supreme Court should have the opportunity to examine for itself the statement claimed by the defendant to be tantamount to a confession of error, so that it may determine what weight, if any, to attach to it.

The judgment of conviction is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and BURKE, J., concur.