The People of the State of Illinois, Plaintiff-Appellee, *v.* John Louis Scott, Defendant-Appellant.

(No. 52226;

First District—March 3, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney of Chicago, (Robert A. Novelle and Stephen J. Connolly, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendant was found guilty in a jury trial of the crimes of rape and attempt (robbery) and was given concurrent sentences of 10 to 15 years.

On appeal defendant contends that error occurred in the trial court in that:

(1) the court admitted evidence of an independent and distinct criminal offense;

(2) the assistant state's attorney, in the presence of the jury, prejudicially tendered to defense counsel unrequested police reports of statements of the complaining witness; and

(3) defendant was insufficiently identified as the perpetrator of the crime.

The State's witnesses included the following.

Dorothy Marbury testified that at approximately 7:00 P.M. on January 11, 1964, she returned to the apartment building at 1119 North Cleveland in Chicago where she resided with her husband and children. She pressed the call button for the elevator serving the even-numbered floors and observed a man press the button for the odd-numbered floor elevator. When she entered the elevator which she had called she pressed the fourteenth floor button. Before the door closed the man, whom the witness identified as defendant, also stepped into the elevator. As the

elevator began to ascend defendant turned the elevator switch off. Defendant then directed the witness to raise her arms. He reached into her coat pocket and her brassiere and demanded her wallet. She told him that she had no wallet and he said that he would kill her if she did not have a wallet. He took a pocket knife from her pocket and opened it. The man then put the knife to her neck and ordered her to remove her clothing. She refused and was again threatened. She then removed her clothing. She struggled with the man when ordered to lie down but complied when the man again put the knife to her throat and said he would kill her. The witness layed down on the man's dark gray car coat which she identified as People's Exhibit No. 1.

Defendant then held the knife to the witness' throat and forced her to have intercourse with him for approximately twenty minutes during which he failed to have an ejaculation. Defendant then attempted to force the witness to perform an act of oral copulation. She struggled with him in an effort to turn on the elevator and he cut her right little finger. He then forced her to lie down and again had intercourse with her for approximately twenty-five minutes at which time he had an ejaculation.

The witness stated that the man wore a blue knit shirt and two pairs of pants, one dark brown and one black. She also observed that he had blood on the lining of this coat. During the approximately one and one-half hours after the man stopped the elevator and during which she was confined in the elevator with him the alarm bell was constantly ringing.

After defendant left the elevator the witness rode to the fourteenth floor where she went to the apartment of her friend, Ophelia Gilbert. Ophelia Gilbert took her to a nearby apartment where a telephone was available and called the police. The witness did not know the people in the apartment nor did she speak with them. The police came and she described the rapist to them as a heavy man about five feet six inches to six feet tall. She added that he "talked funny and had real funny eyes." She also told the officers that the man wore a brown trench coat or car coat, brown corduroy hat and blue shirt with dark brown pants and that the lining of his coat was blood stained. The police officers took her to Henrotin Hospital where stitches were taken in her finger and she was examined.

On January 19, 1964, she went to the Chicago Avenue Police Station. She saw six men in a line-up from which she identified defendant as the man who had raped her. Defendant wore the same coat with a bloodstained lining that he had worn the day she was raped.

Ophelia Gilbert testified that on the night of January 11, 1964,

Dorothy Marbury brought her children to the witness' apartment and left them there sometime before 7:00 P.M. The next time the witness saw Mrs. Marbury was about 8:35 P.M. She stated that while Mrs. Marbury was gone she heard the elevator bell ringing but paid no attention to it because children frequently played with the elevator and she was used to hearing the bell ring. When Mrs. Marbury returned to the apartment she was crying, her clothes were wrinkled, and her hand was cut and bleeding badly and wrapped in a white sweater. The witness then took Mrs. Marbury to a neighbor's apartment where she telephoned the police. The people in the apartment did not ask questions about what happened.

Dominic Panteleo testified that he was a Chicago Police Officer. On January 11, 1964, he and Officer Mackin received a call directing them to a rape victim at 1119 North Cleveland. They went to Mrs. Marbury's apartment and spoke with her. She described the rapist as a Negro about five foot ten, 160 pounds, medium build, ruddy complexion wearing a brown knitted cap, dark gray car coat and dark pants. Her hand was bleeding and the officers took her to Henrotin Hospital where she was seen by Dr. Yao.

Dr. Seetao Yao testified that on January 11, 1964, he was on duty at Henrotin Hospital and examined Dorothy Marbury about 9:00 P.M. She had a laceration on her right hand which he sutured. He did a vaginal smear and made slides, which he identified as People's Exhibits Nos. 3 and 4 which he placed in an envelope, and gave to the police officer.

Joseph Price testified that he is a Chicago Police Officer assigned to the micro-analysis section of the Chicago Police Scientific Crime Detection Laboratory. On January 13, 1964, he conducted a microscopic examination of People's Exhibits 3 and 4 and found them to contain spermatozoa. On January 21, 1964, he examined People's Exhibit No. 1, a suburban coat. He conducted chemical tests on a stain in the lining of the coat and concluded that it was blood. The witness was unable to determine the type of blood.

Marjorie Mullins testified that on January 11, 1964, at approximately 9:00 P.M. she entered the elevator at her apartment building, 1150 North Sedgwick in Chicago. A young man and a girl entered the elevator with her. The girl left the elevator at the eighth floor. The young man, identified by the witness as the defendant, stopped the elevator between the eighth and tenth floors. Defendant displayed a knife and demanded money. He then took a newspaper from the witness and threw it on the floor and ordered her to get down on it. The witness

informed him that she was unable to have intercourse. The man then forced her to perform an act of oral copulation. After some 20 or 30 minutes defendant released the switch which re-started the elevator. When he left the elevator he directed the witness to stay in the elevator. She took the elevator to the tenth floor to her sister's apartment and telephoned the police.

She described the man to the police as 5'6" or 5'11", about 160 to 165 pounds, dark complected and with beautiful even teeth. He was wearing a dark-colored suburban coat, a "V" neck sweater, dark trousers and dark shoes.

Edward Nickels testified that he was a Chicago Police Officer. On January 19, 1964, he was engaged in the investigation of the Dorothy Marbury case. On that date he took the defendant into custody. A line-up was conducted and Dorothy Marbury picked defendant as the rapist from a group of six men. The witness identified People's Exhibit No. 1 as the coat worn by defendant on January 19. The witness had shown the coat to Dorothy Marbury and she identified it and found a stain which she said was in the same location as had been the stain caused by her bleeding hand. The witness also testified that he was familiar with Sedgwick and Cleveland Streets; he stated that the location of the rape committed on Sedgwick is about one-half block from Cleveland Street.

Two witnesses were presented for the defense.

Artel Thompson testified that he lived at 1119 North Cleveland. On January 11, 1964, at approximately 9:00 o'clock two women knocked at the door of his apartment and were admitted. One of the women was permitted to use the telephone to call the police. The other woman whom he identified as Dorothy Marbury had a cut on her hand which she had wrapped. She said that she had been raped on the elevator. She stated that the man who committed the crime was short, sort of fat and shabby dressed. The rapist was not described as 160 pounds with a medium build and ruddy complexion and wearing a brown cap, dark gray coat and dark pants.

Defendant testified in his own behalf. He stated that he had never seen Dorothy Marbury prior to January 19th, when he was taken into custody, and that he had never seen Marjorie Mullins until the day of his trial. On January 11, 1964, he was at 550 West North Avenue from 5:00 until after 11:30 o'clock; several persons saw him there. He stated that he was six feet tall and weighed 165 pounds and that he had worn a hairline mustache for some four years. On cross-examination he stated that his sister lives at 1119 North Cleveland on the fifteenth floor and that his brother lives at 1150 North Sedgwick.

284

*Opinion*

 (1) Defendant's first argument on appeal is that he was denied a fair trial by the admission of evidence of an alleged offense other than that for which he was on trial. In making this argument, defendant relies upon two earlier decisions of this court, (*People v. Fuerback* (1966), 66 Ill.App.2d 452, and *People v. Baxter* (1966), 74 Ill.App.2d 437.) Both of these cases, as defendant asserts, state the general rule that in the prosecution of a crime, evidence of a separate and distinct crime allegedly committed by the defendant is not admissible. This rule is, however, subject to certain exceptions. One exception noted in *Fuerback, supra,* at 66 Ill.App.2d 454, is that evidence of a separate and distinct offense which rebuts an alibi or aids in overcoming challenges to the defendant's identification is admissible. Thus, in *Fuerback* it was said that evidence which tended to establish the defendant's presence in the vicinity shortly after the commission of the crime with which he was charged was admissible, (the crime as testified to by Mullins took place just one-half block away from the crime in question) but that error resulted from the prosecution's added introduction of evidence that, in addition to his proximity to the scene, defendant committed a second crime. In the case at bar defendant concedes that evidence indicating his presence in the vicinity of the crime was admissible but contends that the further testimony of Miss Mullins as to the commission of a crime constituted error.

We are unable to accept defendant's argument. In defendant's cross-examination of the complaining witness there was not only extended questioning directed toward impeachment of Mrs. Marbury's identification of defendant but also an effort to undermine the credibility of her story of the crime generally. Thus, the defense referred repeatedly to Mrs. Marbury's testimony that she spent approximately one and one-half hours with defendant in a public elevator while the elevator was out of service and the alarm bell constantly ringing. Ophelia Gilbert was cross-examined along the same lines. The clear implication of this line of cross-examination of the prosecution's witnesses was the improbability of a crime being committed in the place and fashion testified to by the prosecution's witness-in-chief.

In *People v. Davis* (1958), 14 Ill.2d 196 at 200 the court said:
"With reference to defendant's contention that the trial court erred in admitting testimony of other unrelated crimes allegedly committed by defendant against the complaining witness, the law is clear that evidence which discloses that the accused committed crimes other

than the one charged is admissible where it tends to establish the crime for which he is being tried. [Citations] Such evidence must meet the same test as to relevancy and materiality to the issues as other evidence, [Citations] and has been deemed properly admissible where it tends to establish the identity of the accused; to show his presence at the scene of the crime when an alibi is inter-posed; or to prove *design*, motive, or knowledge where these matters are in issue (emphasis added)." (Citations)

Here, we believe that the *design* of the crime with which defendant was charged was brought into issue by the persistent efforts of the defense to cast doubt upon the commission of a crime in the manner testified to by Mrs. Marbury. Thus, evidence of the second crime was relevant by way of indicating a common design or scheme in the commission of the two crimes. It also shows his presence in the vicinity and contradicted defendant's alibi testimony.

(2) Defendant's second point on appeal is that reversible prejudice was committed by the prosecutor in tendering to defense counsel, in the presence of the jury, certain police reports containing statements of the complaining witness to police officers. In making this argument defendant cites *People v. Beard* (1966), 67 Ill.App.2d 83 and *People v. Lowe* (1967), 84 Ill.App.2d 435. In both of those cases it was held prejudicial for the State's Attorney to bring before the jury the existence of prior statements by prosecution witnesses. The rationale is that, although the defense is entitled to examine these documents upon request, the State's initial disclosure of their existence in the presence of the jury is prejudicial since the jury may infer, if defense counsel does not use it to impeach the witness, that the statement is corroborative of the prosecution witness' testimony.

■■ In the instant case, while it was improper for the State's Attorney to have tendered the statements in the presence of the jury we think that defendant was not prejudiced thereby. The record reveals that it was defense counsel who first called the jury's attention to the existence of the documents during his cross-examination of Mrs. Marbury prior to the complained of tender by the State's Attorney. No argument was made to the jury by the State upon the inferences which might be drawn from the failure of the defense to present the statements in evidence. As in *Lowe, supra*, we find that the incident did not substantially affect the right of defendant to a fair trial. See *People v. Burks* (1969), 105 Ill.App.2d 112.

■■ (3) Finally, defendant contends that the evidence failed to identify defendant beyond a reasonable doubt as the man who com-

mitted the crimes charged. It is argued that the description given by the complaining witness to the police was vague, general and unworthy of belief and that it conflicted with a description allegedly given by her to the defense witness Artel Thompson. No argument is offered that the complaining witness did not have adequate opportunity to observe her attacker. Nor could such an argument be made in view of the fact that the evidence indicated that Mrs. Marbury was confined in a lighted elevator with the man for approximately one and one-half hours. Defendant contends that the description given the police officers who investigated the crime was general and could have fit many men. The mere fact that there may be many men who would correspond to the witness' description does not render the description vague, general or unworthy of belief. And, though there are minor variations in the descriptions, defendant does not cite any important inconsistencies. As for the alleged statement to Artel Thompson, both Mrs. Marbury and Ophelia Gilbert denied that a conversation took place between themselves and the occupants of the apartment from which Mrs. Gilbert telephoned the police. It is reasonable to conclude that the jury either disbelieved Artel Thompson's testimony or thought the description to which he testified not substantially contradictory of the descriptions which Mrs. Marbury gave the police, or of sufficient importance to offset her positive identification of defendant in the line-up of six men.

■■ The finding of the trier of fact will not be reversed on appeal unless the evidence is so improbable as to create a reasonable doubt of the defendant's guilt. *People v. Holt* (1970), 124 Ill.App.2d 198. We do not find this to be such a case.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.