THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DOUGLAS EMMETT, Defendant-Appellant.

(No. 59280;

First District (1st Division)—November 17, 1975.

168

Jason E. Bellows, of Chicago (Bellows & Bellows, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Donald M. Devlin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

The defendant, Douglas Emmett, was found guilty after a jury trial of the crimes of aggravated assault and deviate sexual assault of a woman on January 26, 1972; and sentenced to a term of 7 to 21 years.

The complainant testified that between 7:00 and 8:00 p.m. on January 26, 1972, she was returning home from the grocery store with several packages. As she entered the lobby of her building she observed a man she identified as the defendant, who offered to help with her packages. She first declined the offer, but when the man repeated the offer, she accepted. They took the elevator up to the fifth floor where she lived. She accepted his offer to take the groceries into her apartment. After setting down the groceries, he asked to use her telephone book to call a person he was seeking. While he made the call, she began to put away the items she had purchased. As she was putting certain things away in the bathroom, she turned to leave, but the man was blocking her path. He then turned off the light in the bathroom and put his hand over her mouth; he put a knife in front of her face and told her that she would not get hurt if she did what he wanted. He ordered her to disrobe and

to lie down on the sofa bed. He then took his pants off and while holding the knife at her side performed an act of cunnilingus. He then forced her to perform an act of oral copulation upon him. After he left the apartment, she immediately called a friend who lived a short distance away. The friend contacted the police who arrived several minutes later. On March 11, 1972, she identified the defendant in a line-up consisting of five or six men.

A second woman testified that on January 14, 1972, at approximately 6:00 p.m., she was returning home from work when she observed a man she identified as the defendant in the elevator of her building. When she got off the elevator on her floor she went to the left while the man went to the right. She was entering her apartment when the man suddenly appeared behind her. He put his arm around her neck, produced a small knife and threatened to kill her if she screamed. He pushed her into the apartment and ordered her to disrobe. When he saw that she was having a period, he told her to put her pants back on and sit down on the bed. He grabbed a phone book which was lying on the bed and threw it to the floor. He then forced her to perform an act of oral copulation upon him. He ordered her not to scream and then left the apartment. She immediately called the police. On March 11, 1972, she identified the defendant's photograph from a group of eight or nine which she viewed.

Robert L. Hinman, an evidence technician for the Chicago Police Department, and John Olejniczeak, a fingerprint technician for the Chicago Police Department, established that fingerprints, taken from the telephone book in the apartment of the second woman, in Olejniczeak's opinion, were the defendant's.

The defendant testified that at the time of the assaults upon both women he was attending singing lessons from Mildred Collins at 20 East Jackson Boulevard.

Mildred Collins was a professional voice coach and had a studio at 20 East Jackson Boulevard, in Chicago. She testified that the defendant was in her office receiving singing lessons on January 14 and January 26, 1972. On January 14 he arrived at approximately 6:30 p.m. On January 26 he arrived at 8:30 p.m. although her book showed his appointment at 9:00 p.m.

In rebuttal, Edward Adorjan and William McCoy, Chicago police investigators, testified that on April 10, 1973, they interviewed Mildred Collins. At that time Miss Collins stated that on January 26, 1972, defendant arrived at her studio at 5:30 p.m. to receive singing lessons and left between 6:30 and 7:00 p.m.

Defendant first contends that the trial court improperly admitted the testimony of the second woman and the police technicians because it

was evidence of a crime other than the one for which he was being tried.

As a general rule, evidence of other crimes is admissible to establish identity, intent, absence of mistake or accident, motive, knowledge, or a common scheme or design. (*People v. Lehman*, 5 Ill.2d 337, 125 N.E.2d 506.) In *People v. Scott*, 4 Ill.App.3d 279, 280 N.E.2d 715, the prosecutrix testified that the defendant raped and robbed her at knife point in an elevator. The State proved that the defendant attempted to rape another woman four hours later in an elevator at knife point in a building less than a quarter of a mile from the rape of the prosecutrix. The appellate court upheld the admission of the proof of the other offense partly on the ground that it indicated a common design or scheme in the commission of the two crimes.

In McCormick on Evidence it was noted that other crimes were admissible if they were "so nearly identical in method as to earmark them as the handiwork of the accused." McCormick on Evidence § 190, at 449 (2d ed. 1972).

■■ In this case, the two attacks occurred only 12 days apart. While the time span would not be sufficient to establish admissibility under the identification exception, we think it may be considered along with other circumstances in determining whether the evidence showed a common scheme or design. Both women lived in elevator buildings located within five blocks of each other. The same type of weapon was used, and the deviate sex acts proposed or performed were identical in nature and in sequence. Although strangers to him, he initiated conversations with both women. He asked both for money but took none. We believe that all of the evidence shows that both crimes were "so nearly identical in method as to earmark them as the handiwork of the accused," and we judge that the trial court did not abuse its discretion in permitting the testimony of the second woman.

■■ In his brief in this court, the defendant raises the question of the admissibility of the fingerprint evidence for the first time and then only for the same reasons ascribed for the exclusion of the second woman's testimony. No argument is made here that the evidence is cumulative or unduly emphasizes the other crime. In his opening statement, the assistant state's attorney informed the jury of the offense against the second woman and the fact that the defendant's fingerprints were found in her apartment. No objection was made to any part of the opening statement. Later, the defense did object to the testimony of the second woman before she testified; but at no time did the defense object to the testimony of the police technicians. If there be any error in the admission of the technicians' testimony, we deem it waived. *People v.*

*Trefonas,* 9 Ill.2d 92, 98, 136 N.E.2d 817; *People v. Zemola,* 9 Ill.App.3d 424, 430-431, 292 N.E.2d 195.

Milton H. Ader, an attorney, knew the defendant when the defendant worked in a supermarket. He testified that the defendant had a good reputation in the community as a law-abiding citizen at the time of the offense. On cross-examination, he testified that he had not seen or spoken to the defendant for four years before the trial. During the time he knew the defendant, he did not discuss the defendant's reputation in the community with anyone. Ader admitted that his knowledge about the defendant's reputation was based solely upon his personal observations and contact with the defendant. Upon motion of the State, Ader's testimony was stricken and the jury was instructed to disregard it. The defendant assigns this ruling as error.

The reception of reputation evidence is left largely to the discretion of the trial court (*People v. Willy,* 301 Ill. 307, 320, 133 N.E. 859), and such evidence of community reputation must be based upon the witness' association with the defendant's friends and neighbors. (*People v. Shelton,* 388 Ill. 56, 57 N.E.2d 473.) Reputation testimony cannot be admitted if it shows merely the existence of favorable traits of character deduced by the witness solely from his personal knowledge and observation of the defendant. *People v. De Mario,* 112 Ill.App.2d 175, 251 N.E. 2d 267, *cert. denied,* 397 U.S. 1057; *People v. Reeves,* 360 Ill. 55, 195 N.E. 443.

▮▮ Mr. Ader stated that his testimony regarding defendant's reputation in the community was based solely upon his personal observations and contact with the defendant. He admitted that during the period of time when he knew the defendant he did not discuss the defendant's reputation with any other people in the community. He had not seen the defendant in the four years preceding trial and had no idea of what his reputation was within that time period. Under these circumstances, we judge the court did not abuse its discretion in striking the testimony of Mr. Ader. Moreover, the jury had heard his testimony, as well as the testimony of Joseph Faulhaber, the defendant's employer, who also testified to the good reputation of the defendant. Since the jury heard reputation evidence and since the State's case was a strong one, if there was any error, it was harmless.

The defendant next contends that the pre-sentence investigation did not comply with the statute. Under the Unified Code of Corrections a pre-sentence report is mandatory unless waived by the defendant (Ill. Rev. Stat. 1973, ch. 38, par. 1005—3—1). The Code provides that the pre-sentence investigation shall include information regarding special re-

sources which might be available to assist in the defendant's rehabilitation (Ill. Rev. Stat. 1973, ch. 38, par. 1005—3—2(a)(2)). Here, the presentence investigation report in compliance with this section of the statute provided:

> "We contacted the Assistant Warden Brown of the Cook County Corrections Department and the only institution that he could suggest was at Vienna, Illinois, the newest and most modern institution in the state. They have many facilities to aid in the rehabilitation of the prisoners."

■■ The defendant now argues that this paragraph in the presentence report did not comply with the statute in that it was not sufficiently detailed to inform the trial judge of all the facilities available for treatment of the defendant's psychological problems. He made no objection to the form or depth of the report at the pre-sentence hearing. His argument was that he should not be imprisoned, but placed on a work release program, because, in the opinion of his medical expert, there were no facilities in Illinois, including the institution at Vienna, which were equipped to treat the psychiatric problems of the defendant. He should not be heard now to complain of any insufficiency of the report. Moreover, when a judge sentences a man to the institution deemed the best facility, to require him to appraise inferior facilities as well before selecting the best one would be a meaningless ritual.

The defendant also contends that the mandatory four-year minimum sentence for deviate sexual assault violates article I, section 11 of the Illinois Constitution of 1970 which provides, in part: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship". This same contention was rejected by this court in two cases which upheld the statutory authority of the legislature to set a mandatory minimum term for the crimes of murder and rape. *People v. Dunigan,* 17 Ill.App.3d 498, 308 N.E.2d 338; *People v. Cantrell,* 14 Ill.App.3d 1068, 304 N.E.2d 13.

The defendant also contends that his maximum sentence is excessive because the law in effect at the time he committed the crime provided for a maximum period of imprisonment of 14 years (Ill. Rev. Stat. 1971, ch. 38, par. 11—3), while the Unified Code of Corrections in effect at the time he was sentenced provides that deviate sexual assault is a Class 1 felony (Ill. Rev. Stat. 1973, ch. 38, par. 11—3), the penalty for which is a maximum term of any number of years in excess of four years (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(2)). The defendant argues that he should have been sentenced under the law in effect at the time he committed the crime, since that law provided for a lower maximum sentence.

■■ In answer to the defendant's argument, the State has made a mo-

tion to file a supplemental record and amend its brief. That motion is hereby allowed. The supplemental record consists of the hearing on the post-trial motion, which the State contends contains an election by the defendant to be sentenced under the Unified Code of Corrections. The supplemental record demonstrates that at the post-trial motion the following exchange took place:

"Assistant State's Attorney: May we perhaps at this time inquire as to whether or not the defense elects to proceed under the new code? I would assume that they are.

Defense Attorney: Yes.

Assistant State's Attorney: But perhaps they are not. Is that correct?

Defense Attorney: Yes."

At best, this exchange is ambiguous and is not a clear election by the defendant to be sentenced under the Unified Code of Corrections. The State also argues that the defendant's counsel's actions, in asking that the provisions of the Unified Code of Corrections relating to pre-sentence investigation reports be complied with, constitutes an election to be sentenced under the Code. The fact that defense counsel asked that the procedural provisions of the Unified Code of Corrections, which was in effect at the time defendant was sentenced, be complied with does not constitute an election to be sentenced under the substantive provisions of the Code. We agree with the defendant's contention that he should have been sentenced under the law in effect at the time the crime was committed since that law provided for a lower maximum sentence. Accordingly, we reduce the maximum term imposed upon the defendant to 14 years.

Last, the defendant argues that his minimum sentence should be reduced since the Unified Code of Corrections provides that the minimum cannot exceed one-third of the maximum sentence. First, we note that the defendant cannot initially claim that he should be sentenced under the law in effect at the time of the commission of the crime and then argue that he should also receive the sentencing benefit of the Unified Code of Corrections. Second, the Unified Code of Corrections does not provide that the minimum cannot exceed one-third of the maximum for a Class 1 felony. Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2).

Accordingly, the defendant's maximum sentence is reduced to a term of 14 years and the judgment of the circuit court of Cook County as modified is affirmed.

Judgment affirmed as modified.

BURKE, P. J. and SIMON, J., concur.