THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARK L. OSBORN, Defendant-Appellant.

First District (1st Division)   No. 76-542

Opinion filed September 26, 1977.—Rehearing denied October 24, 1977.

Serpico, Novelle, Dvorak, Navigato & Hett, Ltd., of Chicago (Robert A. Novelle, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, James S. Veldman, and William F. Ward, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Mark L. Osborn (defendant), was found guilty of rape (Ill. Rev. Stat. 1975, ch. 38, par. 11—1) and two acts of deviate sexual assault (par. 11—3). He was sentenced to 5 to 15 years on the rape conviction. He appeals.

In this court, defendant contends that the court erred in admitting hearsay outcry evidence and in considering evidence of other crimes or criminal acts disassociated with the charges for which defendant was

tried; the evidence was insufficient to prove defendant guilty beyond a reasonable doubt and the court considered improper evidence in sentencing the defendant.

The complainant testified that on December 2, 1974, she made a telephone call in response to a help-wanted advertisement in the Chicago Tribune. She recorded her name and phone number on the telepone answering machine. On December 15, the witness received a return telephone call from a man who identified himself as Doctor Mark Osborn of the National Institute of Behavior Counseling. During this call a job interview was scheduled. Three days later the witness met defendant in the prearranged location, a Chicago apartment with appearance similar to an office. A 15-minute interview was ended with no decision about the job. Defendant later told the witness that he lived in the apartment.

The witness testified that on January 11, 1975, defendant called and invited her to a hockey game. She refused. On January 17, defendant again called. He said he wanted to finish discussing the job interview. He invited her to attend a basketball game with him and another couple. She told him that she was going to a party at a friend's home. They agreed to go to the party and also to the game the following evening.

The witness further testified that she and defendant went to the party at the apartment of her friends David and Nickey Krause. After defendant's friends, Howard McArthur and a woman named Nancy, arrived at the party, the two couples went to a basketball game. They returned to the party where they stayed until about 12:30 a.m. After the two couples left the party, defendant remarked that it was a cold night and asked the witness whether he could come up to her apartment for coffee and she agreed.

The witness fixed a hot drink for defendant and they conversed for a short time. Defendant then said, "I usually go to bed with everybody I go out with." The witness testified that she responded, "I don't." Defendant also said, "[I]f I don't go to bed with a woman I don't call her again." The complainant answered, "[T]hat's fine with me, you don't have to call me again." After further conversation, at defendant's request the witness brought him a beer, which he preferred over the tomato juice she had also offered.

Defendant said he planned to leave but first had to use the washroom. The witness testified defendant then walked down a hall where the bathroom was located directly to the left of the kitchen. The witness did not see him enter the bathroom and he returned 8 to 10 minutes later. Defendant sat next to her on the couch and said, "I don't want to alarm you but I'm going to have sex with you." He grabbed and squeezed her throat and pushed her back onto the couch. Defendant lay on top of

the witness and held a knife at her throat. She testified she recognized the knife as a steak knife from her kitchen drawer. She tried to scream but was unable to do so.

Defendant ordered the witness to undress while he counted up to five. He got up and stood next to the couch. She did nothing but told him, "I know who you are and I know where you live. You can't do something like this." Defendant told her, "[I]f you go to anybody or you say anything I'll come back here and get you." He squeezed her throat harder than he had the first time. When the witness tried to push him away, defendant continued to hold the knife at her throat. She testified further that defendant said, "you don't believe I'm going to use this knife * * *" and then ran the knife blade across her thumb, piercing her skin. When defendant again ordered her to undress, she complied and he also removed his clothes.

The complainant related that defendant refused her request for permission to leave the room to remove a sanitary device she wore because of her menstrual period. She removed the device in the living room upon defendant's order. The witness was crying and asking defendant to "get out" and to "please leave me alone." She testified that defendant then pushed her onto the couch and forced her mouth into contact with his penis for 5 seconds. He then placed his mouth on her vagina for about a minute. The witness was crying and sobbing. Defendant lay on top of her, forced her legs apart and engaged in three acts of intercourse during the next half hour. She testified that during this time she cried and held her hands over her face.

After the final act of intercourse, the witness told defendant to get out and he permitted her to put on clothing. Defendant remained in the apartment for 45 minutes. The complainant related, during this time defendant warned her that "nobody better find out about this." He left the apartment at about 4 a.m.

The witness testified that she stayed on the couch, wrapped in blankets until she arose at about 10 the next morning. At that time, she telephoned the Rape Crisis Line and to the person who answered she said that she "wanted to report a rape." She did not speak to a member of the organization which operated the crisis line. About 1 minute later, she telephoned her friend Nickey Krause and told her she had been raped. She also said that she was "afraid to be in the apartment because Osborn had threatened to come back." About an hour later, the witness also called her mother. That night she slept at the Krause apartment.

During cross-examination, the complainant testified that she met defendant on January 18 because she was interested in the job but that she and defendant did not discuss employment that evening. When she and defendant were sitting on the couch after the witness had brought him a

hot drink, defendant put his arm around her and did not remove it when told to do so. He then touched her breast and was "getting friendly" with her.

That evening, she stated during cross-examination, she did not see defendant in her kitchen. When he returned from the bathroom she did not see his hands. The kitchen is 6 to 7 feet further down the hall from the bathroom. She also testified that she took a shower soon after defendant left her apartment. She did not speak to the police until the Saturday following the incident and she did not go to a hospital until two weeks later when she obtained a venereal disease test. She testified that she did not tell her mother about the rape during their phone conversation on January 19.

David Krause testified that during the party at his apartment on January 18, he saw the complainant remove her arm from defendant's hand and shrug his hands from her shoulders. He also related that he and his wife went to the complainant's apartment the afternoon of January 19, and took her back to their apartment where she stayed overnight. When they arrived at the complainant's apartment that afternoon, she was pale and white and had circles under her eyes. The witness did not see her hand at that time. Nickey Krause corroborated the fact that she had received a telephone call from the complainant on the morning of January 19.

Linda Barnes testified for the State that on January 16, 1975, she called defendant in response to a help wanted newspaper ad. One hour later, at 11 p.m., defendant came to her apartment and left materials which she was to collate and staple for a fee of $15. She testified that when defendant did not pick up the materials on January 19 as they had agreed, she tried to contact him several times by phone.

On January 23, the witness told defendant by telephone that she needed the money for her services and told him to come to her apartment that evening. She testified, defendant arrived at the apartment about 10:30 or 11 p.m. The witness, her husband and another couple were present. They watched vacation movies and two films defendant had brought. The witness described these two films as "pornographic." When the other couple left, defendant began to fall asleep. At the witness' suggestion, defendant stayed the night in the guest room.

Mrs. Barnes further testified that the next morning, after her husband had left, defendant stood in her bedroom doorway and "asked if he could get in bed with me." She answered "No" and defendant said "he wanted to ball me." She again refused. The witness went into the kitchen followed by defendant. He made out a check for her work, they talked briefly and defendant gathered his belongings to leave. She testified that while they were standing in the foyer, defendant grabbed her by the throat, said "we were going to bed together," and backed her into the bedroom while holding her throat. He tore her robe partially open. When

the witness told defendant to understand that "it was a rape," he pushed her onto the bed and left.

On cross-examination, she stated that an attempt rape charge against defendant based on the incident in her apartment had resulted in a finding of no probable cause at the preliminary hearing. She also testified that she had invited defendant to her apartment for a party the night of January 23 and had asked him if he would like to bring pornographic films.

Howard McArthur, a defense witness, testified that on January 18, after he, his date, defendant and the complainant left the Krause party the second time, he remembered that the complainant invited defendant to come to her apartment. He stated a verbatim version of the conversation. However, the witness could not remember what date the party was held, what time he left the party, whether or not he went to a basketball game or what time they returned to the party after the game.

Defendant testified that he called for the complainant at her home. He escorted her to the Krause party where they stayed about 45 minutes. They met Howard McArthur and his date there and they all went to the basketball game. The complainant did not object to his "quick" kisses, to holding hands or to his putting his arm around her. They then all returned to the party where he and complainant had the same amount and type of physical contacts. All four of them left the party together. Defendant and the complainant returned to her apartment at her invitation. She asked him to go there and "have a drink."

Defendant testified further that in the apartment they put their arms around each other. They kissed and petted to the point of intimate physical contact until the complainant requested him to stop because she was having her menstrual period. No sexual intercourse or other intimate sexual contact occurred between them. Defendant related that they conversed and watched television. After the program ended, about 2 or 2:30 a.m., she asked him if he had selected someone for the job. He told her that he had. After a short conversation the complainant told him to leave "right now" because she was very tired.

On cross-examination, defendant admitted that he was neither a medical doctor nor a PhD. He stated that the Institute for Behavioral Counseling was his organization and had been in existence for 6 months prior to the complainant's application for a job. Three other persons in the field of psychology were affiliated with this counseling service. Defendant could remember none of the names of these three associates in his business.

Defendant first urges that testimony by the complainant regarding statements she herself made on the telephone to the "rape crisis" people and to her friend Nickey Krause; and statements testified to by Nickey

Krause which she made on the telephone to the complainant are improper as hearsay. We disagree. The situation concerns testimony by witnesses who are under oath and subject to cross-examination in open court regarding statements which these witnesses themselves made.

■■ This situation is governed by the leading and frequently cited case, *People v. Carpenter* (1963), 28 Ill. 2d 116, 120-22, 190 N.E.2d 738. Since the witnesses in the case before us testified only as to what they themselves said, and were available for cross-examination, their testimony was not hearsay. The case before us is, therefore, not a situation in which an attempt is made to introduce testimony by a third person regarding statements made by a complainant. There is no issue of remoteness of the declarations here from the point of view of an exception to the hearsay rule since we are dealing only with statements made by the witnesses themselves which are not hearsay. This testimony was properly received by the trial court. *Carpenter; People v. Johnson* (1976), 42 Ill. App. 3d 425, 432-33, 355 N.E.2d 699, *appeal denied*, 65 Ill. 2d 579; see *People v. Poole* (1970), 121 Ill. App. 2d 233, 238-39, 257 N.E.2d 583.

■■ Defendant also contends that complainant's statements to the Rape Crisis Line and to Nickey Krause on the morning of January 19 were inadmissible as self-serving declarations. This specific objection was not raised at trial and is therefore waived for purposes of appeal. (*People v. Hampton* (1977), 46 Ill. App. 3d 455, 463-64, 360 N.E.2d 1333, citing *People v. Jones* (1975), 60 Ill. 2d 300, 306-07, 325 N.E.2d 601.) Even without the waiver, the principle advanced by defendant applies only to proof by a party of his own self-serving statements. (*People v. Colletti* (1968), 101 Ill. App. 2d 51, 55, 242 N.E.2d 63, *cert. denied* (1969), 396 U.S. 927, 24 L. Ed. 2d 225, 90 S. Ct. 259.) The complainant was not a party to these proceedings. See *People v. O'Neal* (1976), 44 Ill. App. 3d 133, 136, 358 N.E.2d 47, *appeal denied*, 64 Ill. 2d 598.

In this court, defendant also asserts that complainant's testimony that she stated she had been raped was not admissible as a corroborative complaint under *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25. This question was not raised in the trial court in any manner and is accordingly waived. (*Hampton; People v. Harvey* (1976), 41 Ill. App. 3d 869, 870, 354 N.E.2d 393.) Further, in light of complainant's clear and convincing testimony on direct examination that she had been raped by defendant and the corroborative common design evidence, as above reviewed, we cannot conclude that admission in evidence of her subsequent complaints could have been plain error, affecting substantial rights. See *People v. Howell* (1975), 60 Ill. 2d 117, 120-21, 324 N.E.2d 403; *People v. Harbaugh* (1976), 40 Ill. App. 3d 295, 299-300, 352 N.E.2d 412; Ill. Rev. Stat. 1975, ch. 110A, par. 615(a).

■■ Defendant charges that the trial court improperly received the evidence of Linda Barnes as above summarized. It is correct that as a general rule the courts of Illinois have rejected efforts to prove guilt of the offense on trial by proof of other crimes allegedly committed by the defendant. (*People v. Stadtman* (1974), 59 Ill. 2d 229, 231, 319 N.E.2d 813.) However, as exemplified by two recent decisions of the Supreme Court of Illinois, the exception has been strongly established that evidence relevant to the issue of guilt of the offense on trial may be admissible even though it may also tend to establish guilt of the commission of another crime. Where the challenged evidence "goes to show motive, intent, identity, absence of mistake or *modus operandi* * * *" it is admissible though it may incidentally show the commission of a separate offense. (*People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489, and cases there cited. See also *People v. Romero* (1977), 66 Ill. 2d 325, 330, 362 N.E.2d 288.) In *McDonald,* the court paraphrased the principle as providing "that evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime." 62 Ill. 2d 448, 455.

■■ The issue before us is whether the trial court abused its discretion in admitting Barnes' testimony as evidence of a common design or *modus operandi.* In reviewing the admissibility of this evidence, we must determine whether "all of the evidence shows that both crimes were 'so nearly identical in method as to earmark them as the handiwork of the accused' * * *." (*People v. Emmett* (1975), 34 Ill. App. 3d 167, 170, 340 N.E.2d 235, quoting McCormick, Evidence §190, at 449 (2d ed. 1972).) In three recent decisions involving convictions for sex offenses, this court has analyzed several points of comparison between details of the offenses charged and testimony offered to prove defendant's commission of other crimes as proof of a common design. (*People v. Therriault* (1976), 42 Ill. App. 3d 876, 356 N.E.2d 999, *appeal denied* (1977), ___ Ill. 2d ___; *Emmett,* 34 Ill. App. 3d 167; *People v. Scott* (1972), 4 Ill. App. 3d 279, 280 N.E.2d 715, *appeal denied* (1972), 52 Ill. 2d 596.) In these cases, in upholding the admissibility of the evidence of other crimes we considered several common factors with no single element of similarity or combination of such elements emerging as essential to the competence of the testimony. However, these decisions reveal several significant points of comparison which were relied on to support the admissibility of the common design evidence.

In *Therriault,* defendant gained entry to the victims' homes through kitchen windows. This was his common method of initial contact with both women. In *Emmett* and *Scott,* defendants followed eventual victims into elevators in their apartment buildings. In *Emmett,* defendant initiated conversations with both victims. (34 Ill. App. 3d 167, 170.) The

type of force used against the victims was significant in *Emmett* where defendant, while holding a knife, put his hand over one victim's mouth and his arm across the other's neck. In *Scott,* defendant threatened and cut the complainant with her own knife. In the other offense he only threatened the woman with a knife. The location of the sexual attacks was commented on in *Therriault* and *Emmett* where the offenses occurred on the bed of each victim after defendant had forced her to lie or sit thereon. Finally, the time span between offenses was held to be among the relevant circumstances in showing common design. In *Emmett* (34 Ill. App. 3d 167, 170), the crimes were 12 days apart and in *Therriault* one month intervened between the offenses. (42 Ill. App. 3d 876, 886.) In all three of these cases the challenged evidence of other crimes was held competent.

■■ Close examination of the Linda Barnes testimony and comparison with that of the complainant shows a number of strong elements of factual similarity as in the cases above cited. In both cases, the woman made contact with the defendant by means of a newspaper advertisement for help. In both cases, the original contact was for employment but, in good part as a result of the efforts of defendant, the relationship soon broadened into a social and more personal type of contact. Both of the incidents occurred in the privacy of the homes of the respective complainants to which defendant had been invited. In both situations defendant expressly told the woman he was going to have sexual relations with her. In both cases he depended upon physical force in commencing to obtain his stated desire. In both instances he seized the woman forcefully by the throat. In both cases, however, the defendant's conduct was sexually motivated. In *McDonald,* the supreme court pointed out four examples of parallelism between the offenses. (62 Ill. 2d 448, 455.) Evidence of the former incident was held competent. It is correct that in the case before us differences between the two situations existed. But, in our opinion, the factual similarities between these two situations are so strong and persuasive that they are sufficient to make evidence of the earlier offense relevant as proof of the existence of a common design and *modus operandi.* We note also that the testimony of Linda Barnes stands uncontradicted.

■■ Defendant maintains that the testimony of Linda Barnes was inadmissible because it did not establish the commission of a crime. Defendant correctly points out that in *People v. Scott* (1973), 13 Ill. App. 3d 620, 301 N.E.2d 118, the court stated that prior to admission of evidence of other crimes "it must first be shown that a crime actually took place and that the defendant committed it* * *." (13 Ill. App. 3d 620, 626.) In *Scott,* evidence of defendant's possession of checks imprinted with names other than his was held inadmissible in a trial for armed

robbery occurring in an office building where the State failed to connect the checks with any of the offices or tenants of the building. In the record before us, the testimony of Barnes that defendant grabbed her throat, announced his intention to "go to bed" with her, forced her into the bedroom and tore her robe partially open was convincing proof of the crime of attempt rape, being a substantial step toward the commission of rape with the specific intent to commit that offense. *People v. Almond* (1975), 31 Ill. App. 3d 374, 377-78, 333 N.E.2d 236; Ill. Rev. Stat. 1975, ch. 38, par. 8—4; see *People v. Miller* (1976), 40 Ill. App. 3d 761, 762-63, 353 N.E.2d 145.

■■ Defendant places heavy emphasis on the fact that, after the Linda Barnes incident, a charge of attempt rape was dismissed after a preliminary hearing. Defendant cites *People v. Butler* (1975), 31 Ill. App. 3d 78, 334 N.E.2d 448, *appeal denied* (1975), 61 Ill. 2d 598. Defendant further relies on *Butler* in arguing against the reception of the Barnes testimony because its probative value was outweighed by its prejudicial impact. In *Butler*, defendant was tried before a jury for armed robbery of a store manager. The State's theory was that defendant had previously committed another armed robbery of the same person at a different store in the same town. The State offered evidence of the earlier robbery, as to which defendant had been acquitted, as proof of identification. This court reversed a conviction for the second robbery on the theory that the evidence of the earlier crime was prejudicial. The complaining witness had testified at length regarding the details of the first offense which "were clearly unrelated to the crime in question and were unnecessary to establish identity." (31 Ill. App. 3d 78, 81.) The *Butler* court also pointed out that the majority American rule is that acquittal of the prior offense does not necessarily render evidence thereof incompetent. The prior acquittal does not require application of the theories of estoppel by verdict or res judicata. 31 Ill. App. 3d 78, 81 n.2.

As we have previously set out in detail, the substance of Barnes' testimony was probative of a common design or *modus operandi. Butler* is distinguishable, therefore, because in that case details of the other offense unnecessary to the identity issue were admitted in evidence. Further, the holding in *Butler* was based on the determination that the prejudicial impact of the evidence upon the jury outweighed the probative value of the testimony (31 Ill. App. 3d 78, 81). The operation of the balancing test used in *Butler* is of minimal value in a bench trial where the evidence is fully disclosed to the court so that its admissibility may be decided.

Defendant also urges along these same lines that Barnes' testimony was not admissible because it did not prove commission by defendant of rape or deviate sexual assault, the offenses for which he was on trial. We cannot

agree. The law of Illinois does not require that both offenses be identical. *People v. Yonder* (1969), 44 Ill. 2d 376, 390, 256 N.E.2d 321, *cert. denied* (1970), 397 U.S. 975, 25 L. Ed. 2d 270, 90 S. Ct. 1094, and *People v. Lehman* (1955), 5 Ill. 2d 337, 343, 125 N.E.2d 506, demonstrate that the critical question is not identity of the two offenses but is whether a comparison of the acts as a whole in both offenses demonstrates a common design and the same *modus operandi.*

We conclude that the proof here shows convincingly the same *modus operandi* and that the evidence of Linda Barnes was competent.

Defendant also cites *People v. Ulrich* (1963), 30 Ill. 2d 94, 195 N.E.2d 180. Defendant there was tried for indecent liberties with a child. The State sought to prove similar acts with another child, both arising out of the same incident. Defendant had previously been acquitted when tried for the former acts. The supreme court there pointed out that evidence of the former crime was not only highly prejudicial but would not serve to prove any factual issue as to the later offense. The decision is therefore not pertinent here.

Defendant maintains that the evidence was insufficient to support the findings of guilty because the complainant's testimony was highly suspect and self-impeaching. He relies upon: the delayed outcry by the complainant, lack of medical evidence, absence of evidence of bruises or other trauma in spite of complainant's testimony that her thumb had been cut, the State's failure to introduce the knife in evidence, delay in reporting the crime to police and alleged discrepancies between the complainant's testimony on direct and on cross-examination.

■■ In rape cases, we are bound by a special duty to examine the evidence carefully. (*People v. Reese* (1973), 54 Ill. 2d 51, 57, 294 N.E.2d 288.) If the testimony of the complainant is found to be clear and convincing, that testimony alone will support a conviction for rape, despite a denial by defendant. (See *People v. Martinez* (1976), 39 Ill. App. 3d 934, 937, 351 N.E.2d 293; *People v. Hendon* (1975), 33 Ill. App. 3d 745, 749, 338 N.E.2d 472, *appeal denied* (1976), 62 Ill. 2d 590.) On the other hand, if the testimony of the complainant is not clear and convincing, corroboration is necessary. (*People v. Jones* (1976), 40 Ill. App. 3d 850, 857-58, 353 N.E.2d 375, *appeal denied* (1976), 64 Ill. 2d 597; see *People v. Brown* (1975), 32 Ill. App. 3d 182, 187, 336 N.E.2d 523.) Minor variances in a complainant's testimony may go to the question of credibility, but will not raise the corroboration requirement where the testimony is otherwise clear and convincing. (*People v. Williams* (1975), 33 Ill. App. 3d 219, 222, 338 N.E.2d 133.) Finally, in a bench trial, the trial court must determine the weight and credibility of all testimony presented and "make a finding as to whether the guilt of the accused had been established." (*Reese,* 54 Ill. 2d 51, 59 quoting *People v. Walcher* (1969), 42

Ill. 2d 159, 165, 246 N.E.2d 256.) A reviewing court "will not set aside a finding of guilty unless the evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused. [Citation]." 54 Ill. 2d 51, 58.

■■ Upon careful study of the record, we conclude that the testimony of the complainant was clear and convincing that defendant, by squeezing her throat, by threatening and cutting her with a knife and by physical superiority overcame her resistance and completed the offenses charged. Under thorough and vigorous cross-examination, her testimony remained positive and certain as to all major elements and nearly every minor detail of her version of the incident. Notably, the trial court expressly found the complainant's testimony to be "clear and convincing" and further stated: "There was no question about her statements. I doubt that there was an iota of fiction. All fact."

■■ Defendant's arguments against the sufficiency of the complainant's testimony divide into two categories: inherent inconsistencies and improbabilities; and lack of corroboration. In the first category, defendant relies on portions of complainant's testimony during cross-examination which were not included in her direct examination. On cross-examination, complainant related that defendant put his arm around her and touched her breast when they returned to the apartment from the Krause party. However, the complainant also testified on cross-examination that during this incident she told defendant to remove his arm and she moved away from him. Defendant's additional argument that the delayed outcry by complainant rendered her testimony unconvincing is not persuasive. The time between the complaint of rape and the offense " 'will naturally vary in accordance with the circumstances of each particular case and there is no definite limit of time within which the complaint must be made.' " *Reese*, 54 Ill. 2d 51, 58, quoting *People v. Garreau* (1963), 27 Ill. 2d 388, 392, 189 N.E.2d 287.

■■ The record before us shows that the physical and emotional ordeal of three acts of intercourse and two deviate sexual assaults was also accompanied by complainant's physical struggle with defendant. The incident did not end until very early in the morning and defendant threatened the complainant before leaving the apartment. After spending the night wrapped in a blanket, the complainant arose at 10 a.m. and reported the rape to both the Rape Crisis Line and her friend Nickey Krause. Under the circumstances, the delay was not sufficient to cast serious doubt upon her testimony. Similarly, the 5- to 6-day interval between the rape and complainant's first conversation with a police officer does not alter our appraisal of her testimony. In light of the complainant's statements to the Rape Crisis Line and to Nickey Krause on the morning of January 19, the delay in contacting the police does not

prove fabrication. We view this delay as more indicative of consideration whether to tell the details to the police and involve herself in a prosecution. Finally, other discrepancies in the victim's testimony are no more than minor variances which were properly resolved as credibility questions by the trial court.

Defendant also points to the State's failure to place the knife in evidence, the absence of medical evidence of rape and the lack of corroboration of complainant's testimony that her thumb had been cut. Under the foregoing authorities, since we have concluded that the complainant's testimony was clear and convincing, no corroboration is necessary to support the convictions. Further, the lack of medical evidence is not critical because such testimony "is not required to prove a rape* * *." (*Reese*, 54 Ill. 2d 51, 58, quoting *People v. Boney* (1967), 38 Ill. 2d 23, 24, 230 N.E.2d 167.) We also note that complainant did obtain a venereal disease test at a hospital two weeks after the rape.

■■ In addition, even if we found complainant's testimony to be unconvincing, corroboration was supplied by competent evidence of common design or *modus operandi.* Upon close scrutiny of the entire record, we are convinced that the evidence amply supports the finding of guilty and is not so improbable or insufficient as to create a reasonable doubt of defendant's guilt.

■■ Defendant objects to the sentence of 5 to 15 years. He also objects to evidence which the court heard in aggravation. In our opinion, since the sentence should be reduced to the statutory minimum of 4 years, consideration of the latter contention is not required. Defendant had but one prior misdemeanor conviction in another state. No serious physical injury was inflicted upon the complaining witness. Upon due consideration of all of these matters, we regard this situation as proper for the exercise of our authority to reduce the sentence. (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4).) The sentence is accordingly reduced to a minimum of 4 years and a maximum of 8. As thus modified the judgment for rape is affirmed.

■■ The court found defendant guilty of rape and of two acts of deviate sexual assault. Only one sentence was imposed. We will accordingly vacate the incomplete judgments entered on the two counts of deviate sexual assault. *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.

Judgment for rape affirmed as modified. Judgments for deviate sexual assault vacated.

McGLOON and O'CONNOR, JJ., concur.