THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN PETERS, Defendant-Appellant.

(No. 60852;

First District (1st Division)—October 20, 1975.

Lynn Sara Frackman, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, John Peters (defendant) was found guilty of armed robbery and was sentenced to 4 to 6 years. He appeals. He was 17 years old at the time of the occurrence. He is a son of Arthur Peters. They were codefendants in the trial of criminal charges. This opinion should be read in conjunction with our opinion in the companion case (*People v. Peters*, 33 Ill.App.3d 284) this day filed.

The same contentions raised in the appeal of Arthur Peters (except those regarding insanity and the consecutive sentences) are made here. We reach the same result here and reject the same contentions also made in behalf of John Peters. There remains for consideration here only the contention of John Peters that the evidence is not legally sufficient to support his conviction on the theory of accountability. Ill. Rev. Stat. 1973, ch. 38, par. 5—2.

Insofar as the facts recited in our opinion concerning Arthur Peters are material here, they are incorporated into this opinion. In addition, John Peters testified that on February 10, 1972, the day of the robbery, he and his father joined two of their friends (named Ballauer); also father and son. John drove the group to visit two taverns. He remained outside in the car. The four men then returned to the Peters' home where John lived with his mother. John testified that he remained on the front porch while the other three men went into the basement of the house where there was a target trap. He did not know what the others did in the basement. He did see his father give the older Ballauer a 9-millimeter gun that morning. John knew that his father had bought a .25-caliber gun two weeks before the robbery, but he did not see the gun in his father's possession on that day.

The fathers and sons left the Peters' home and John drove them to the sporting goods store in Berwyn. His father and Mr. Ballauer got out of the car in front of the store. He then drove the younger Ballauer to the rear of the store. The defendant remained in the front seat of the car during the entire robbery listening to the radio. The car motor was kept running at all times. Young Ballauer got out of the car and opened the trunk.

John also testified that he saw Frank Posejpal, the store owner, and Mr. Ballauer make several trips from the store to the trunk of the car. Mr. Posejpal was carrying "some rifles belonging to Mr. Ballauer." He also saw the older Ballauer carrying a pillowcase which contained some guns. The guns were loaded into the truck of the car. Defendant thought the rifles were in exchange for an outboard boat motor which his father had sold to Frank Posejpal. The used motor was small and he believed it was worth in the area of $1000. His father had not been paid for the motor.

The trunk of the car was open and the defendant could not see behind the car. He saw a gun being fired from the back of the store when the police arrived, but did not see his father fire it. He did not remember if he knew that his father was carrying a gun. He did not know that a robbery was being committed until he was arrested some 15 minutes after he had first arrived.

In a written statement made to an Assistant State's Attorney shortly after his arrest, John stated that he knew that his father was carrying an automatic pistol in a holster when he entered the sporting goods store. He saw his father shoot the gun at the police from the rear door of the store. In this statement he also said that he had unlocked the car trunk and that he and young Ballauer had remained in the car during the robbery. This statement was used by the State in impeaching John's testimony.

■■ The defendant contends that the evidence does not establish his legal accountability for the armed robbery. A person is legally accountable for the conduct of another when: "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1973, ch. 38, par. 5—2(c).

The defendant argues that he was not aware that a robbery was being committed until he was arrested, that mere presence at the scene of the crime is the only evidence against him, and that he is therefore not accountable. Mere presence at the scene of a crime does not render a person accountable for the acts of another. (*People v. Shields*, 6 Ill.2d 200, 127 N.E.2d 440.) However, a defendant who is present at the scene of a robbery is accountable if he "aids another in the planning or commission of the offense." (*People v. Kessler*, 57 Ill.2d 493, 497, 315 N.E.2d 29, *cert. denied*, 419 U.S. 1054.) In *Keesler*, the court affirmed the conviction of a defendant who had waited in the car while his friends robbed a tavern. He had been present when the robbery was planned and had "led" the others to the scene. 57 Ill.2d 493, 498.

The Illinois Supreme Court has stated that although " ' * * * mere presence and negative acquiescence is not sufficient to constitute a person a principal to a crime, one may aid and abet without actively participating in the overt act, and if the proof shows he was present at the crime without disapproving or opposing it, the trier of fact may competently consider this conduct with other circumstances and thereby reach·a conclusion that such person assented to the commission of the criminal act, lent his countenance and approval * * *.' " (*People v. Nugara*, 39 Ill.2d 482, 487, 236 N.E.2d 693, *cert. denied*, 393 U.S. 925.) In *Nugara*, the Court affirmed the conviction of a defendant who had accompanied a friend who was attempting to burglarize a shop at 3 a.m. The defendant had not physically participated in the attempt to burglarize the shop.

A defendant need not actively assist in the commission of a crime to be accountable for the offense and his "presence and lack of opposition [to the commission of a crime] may be considered together with other facts and circumstances in determining whether he approved the crime and abetted its commission." *People v. Harris*, 105 Ill.App.2d 305, 315, 316, 245 N.E.2d 80, *aff'd.*, 55 Ill.2d 15, 302 N.E.2d 1.

■■ John Peters' contention that he was an innocent bystander defies credibility. He had spent the morning with the two Ballauers and his father. Though he testified that he remained on the front porch when the other three went into his house, he seemed quite sure that the three had gone to the basement after entering the house. His testimony that he did not know his father was carrying a gun on the day of the robbery was impeached by his statement that he had seen a gun in his father's possession that morning. Similarly, his insistence that he did not participate in the crime was impeached by an earlier statement that he had opened the trunk of the car so the guns could be put into it. He saw a number of guns being brought to the car, and testified that he thought they either belonged to Mr. Ballauer or were in exchange for an outboard motor his father had sold to Frank Posejpal, although the motor was used and was worth approximately $1000. He drove the other three men to the sporting goods store and waited in the alley with the motor running. All of these circumstances support the jury's conclusion of guilt on the theory of accountability.

All of the cases on which the defendant relies are distinguishable from the case before us in that each involved a situation in which the defendant was simply and only present at the scene or merely·in the company of a guilty person. See *People v. Shields*, 6 Ill.2d 200, 127 N.E.2d 440; *People v. Collins*, 15 Ill.App.3d 1001, 305 N.E.2d 186; *People v.*

300

*Adams,* 8 Ill.App.3d 62, 289 N.E.2d 53, and *People v. Ramirez,* 93 Ill.App.2d 404, 236 N.E.2d 284.

The very best that can be stated concerning the evidence of accountability from defendant's point of view, is that it presented an issue of credibility to the jury. It was the province of the jury as trier of fact to weigh this issue of credibility and to determine matters of fact. We cannot say that the evidence is so unsatisfactory as to justify a reasonable doubt of guilt. The determination made by the jury will not be disturbed. (*People v. Benedik,* 56 Ill.2d 306, 310, 307 N.E.2d 382.) The judgment is affirmed.

Judgment affirmed.

BURKE, P. J., and SIMON, J., concur.