THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIE H. BURGIN, Defendant-Appellant.

First District (1st Division)   No. 77-1886

Opinion filed June 25, 1979.

Randolph N. Stone and Frederick F. Cohn, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Following a jury trial, Willie H. Burgin (defendant) was found guilty

of rape (Ill. Rev. Stat. 1975, ch. 38, par. 11—1), and sentenced to 50 to 100 years. Defendant has appealed.

Defendant's brief in this court raises nine issues. This opinion will summarize the evidence, consider the issue of reasonable doubt and then consider each of the remaining issues.

The complainant, a full-time summer student at Northwestern University in Evanston, testified that on Saturday night, July 3, 1976, after dinner, she walked from her apartment to the library. She left the library at approximately 10 p.m. and walked toward home alone. The area was well lighted. Not many students were on campus that night.

A man wearing a faded light blue, patchwork, waist-length, blue-jean jacket and riding a bicycle, rode past her on her left. He made a U-turn and came straight at her. He said, "Let me get on you for five minutes." She continued to walk. The man then came up behind her on her right. He grabbed her arm with both his hands and while straddling his bicycle stated, "I'm trying to talk to you." Complainant told him, "Let go of me. I'm going home." She then tried to draw her arm away. The man just grabbed her arm tighter and said, "Don't do that." She again told him to let go of her and that she was going home. While continuing to hold her arm, he asked her if she lived "with her people." She said, "Yes, on Chicago Avenue." That was not really where she lived. During this time complainant was looking for other people who could help her. She saw no one.

As she tried to draw away, she felt her hand "being pushed down towards his crotch." He then told her he just wanted to talk to her. After further conversation, she tried to draw her arm away. The man said, "I'm stronger than you. Don't make me hit you." At the time, complainant was wearing hard contact lenses. She testified that this made her fearful of being hit in the eyes. She asked him not to hit her and he told her, "Let's go that way and talk." The man started pushing her toward a darker area. She tried to go over toward a lighter one. The man told her to stop that and dropped his bicycle to the ground. He then said, "Let's go down here." He indicated a driveway that led underground. Complainant tried to get away and the man asked her if she was afraid of him. She told him that she was. He said, "Don't make me hurt you. I'll hurt you." At that time he was walking the complainant down the driveway. He again repeated, "I'll hit you." The driveway had concrete walls which became higher as they descended. There were no lights there.

As the man was pulling the complainant down the driveway, she said, "Please don't hurt me. I'm a virgin." He continued walking her down and put her against one wall. He then kissed or tried to kiss her on the

mouth, undid her pants, and pulled her pants and underpants down to her feet. He then sat her on the ground by pushing her shoulders down. The man was trying to keep her from curling up while she was rocking back and forth saying, "No, don't do it, please." Complainant thought she heard someone at the top of the driveway. She was too scared to scream. She started to talk in a loud voice saying, "Please don't do it, just stop." The man said, "We'll have none of that. Just let me in for five minutes." He was grabbing complainant by the shoulders and had her head up. She was afraid that her head would hit the cement floor. He then had intercourse with her and left the scene. Complainant then began walking up the sidewalk toward a building where she knew there was a telephone. In a few minutes, she saw a couple in front of a building. She walked up to them and stated, "I've just been raped."

The complainant made an in-court identification of defendant as the man who had intercourse with her. On cross-examination she stated that she had attended a campus karate course for 8 weeks with two sessions of 2 hours each per week.

The couple that complainant saw were Jason Cortina and Valerie Brown. They testified that she was staggering and appeared to be breathing deeply and most rapidly. Also, she was sobbing. She told them, "I've just been raped." Then she began to scream. They walked toward the telephone together.

Complainant described her assailant to them as a black man, 5 feet 7 inches tall to 5 feet 8 inches tall. He had a mustache and goatee, and his hair was cut in a 2-inch afro style. She told them that he was riding a multispeed bicycle. She continued to sob. The police were called. Neither Brown nor Cortina saw anyone else on campus that night before they saw the complainant. They did not hear any loud noises, screams or cries for help.

The police arrived about 5 minutes after the telephone call. Complainant returned to the scene of the attack with the police officers and then was taken to the Evanston Hospital emergency room by Detective Glanz.

The complainant was examined by Doctor Ralph Tamura, assisted by Nurse Bonita Rich. The doctor observed that she appeared anxious and that she had a bruised area on her left elbow. The nurse noted that she was emotionally upset. The nurse did not notice any rips or tears in complainant's clothing; nor did she observe any cuts, bruises or lacerations on complainant's body.

After leaving the hospital, the complainant and a girlfriend went to the Evanston Police Station where complainant described to Detective Glanz what had happened to her. She described her attacker and looked through a number of photographs. The next day complainant described

her attacker to a police artist who made a composite drawing of the suspect.

At approximately 8 p.m. on July 4, 1976, based on the description supplied by complainant, the police picked up the defendant in Evanston. At the police station Detective Glanz advised defendant of his constitutional rights and defendant stated that he understood. The detective also informed defendant that he matched the description of a suspect who was wanted for a rape that had occurred on Northwestern campus the previous night. Defendant stated that he had not raped anyone. He had been with his people (his aunt and uncle) until 10 p.m. on July 3. Later defendant told a police officer that he had been on Northwestern campus the night of July 3 and had encountered a girl there and they had had sexual intercourse. This was around 10 p.m. that night. A written statement was taken in which defendant claimed that the girl had initiated both the meeting and the intercourse. He stated that he told her his name and where he worked. He denied ever threatening her.

Complainant identified defendant in a lineup. Defendant asked if he could see the complainant. The detective asked complainant's permission, which she gave. A police detective asked defendant if the complainant was the girl with whom he had sexual intercourse. The defendant said that she was the girl.

The State also called another Northwestern student who was raped on the campus 2 weeks before the attack on complainant. The student identified defendant in court as her assailant. She testified that on Saturday, June 19, 1976, around 8:30 p.m., while she was walking on the campus she saw defendant ride past her on a bicycle. He stopped his bicycle just ahead of her and got off. He told the student, "Come over here, and you're going to do something for me." She tried to run away but defendant grabbed her. She continued to try to get away and screamed. Defendant told her not to scream and put his hands over her mouth and squeezed her nose. She was afraid that she would be choked. He told her to be quiet and if she did what he wanted he wouldn't hurt her. He did not have a weapon. Defendant then grabbed her arm and dragged her to a construction site. He dragged her to the bottom of the site, about 20 feet deep. Defendant then had intercourse with her against her will. He walked quickly up the grading and away. She told her parents she had been raped. She told the police her attacker was a "Negro male in his twenties," between 5 feet 8 inches and 6 feet tall, but it was difficult for her to judge because she was very short. He had a short afro hairstyle and a goatee. His face was "medium", not full or thin. She then talked to the police artist who made a composite drawing of her attacker. She told the artist that her attacker's face was not as full as the one in the portrait and his hair was curlier. She was only fairly satisfied with the drawing.

The prosecution rested. Defendant then rested without evidence.

## I.

On the issue of sufficiency of the evidence, we note first that in rape cases the State is required to prove beyond a reasonable doubt that the act was committed by force and against the will of the complainant. (*People v. Carroll* (1977), 49 Ill. App. 3d 387, 391, 364 N.E.2d 408, *appeal denied* (1977), 66 Ill. 2d 632; Ill. Rev. Stat. 1975, ch. 38, par. 11—1(a).) In these cases, courts of review "have a special duty of carefully examining the evidence * * *. [Citation.] But in doing so the court may not encroach upon the function of the trier of fact to weigh credibility and otherwise assess the evidence * * *. * * * A court of review will not set aside a finding of guilty unless the evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused." *People v. Reese* (1973), 54 Ill. 2d 51, 57-58, 294 N.E.2d 288.

■■■ While the evidence must prove that the act was against the will of the complainant, there is no definite standard for determining the amount of resistance required. Such determination must be made from the facts and circumstances of each case. (*People v. Jones* (1976), 40 Ill. App. 3d 850, 856, 353 N.E.2d 375, *appeal denied* (1976), 64 Ill. 2d 597.) The evidence as above set forth shows that the complainant's clothes were not torn, she had only one bruise and she was not struck by defendant at any time. "However, rape can be established by the threat of force which coerces a female to engage in sexual intercourse, as well as by the actual use of force." (*People v. Merritt* (1978), 64 Ill. App. 3d 482, 486, 381 N.E.2d 407.) The complainant testified that defendant grabbed her arm with both his hands. When she tried to draw away he grabbed her tighter and told her, "Don't do that." Later he told her that he was stronger than she. He said, "Don't make me hit you." She further testified that she was frightened. She wore hard contact lenses and was afraid of being hit in the eyes. Defendant further threatened her by saying, "Don't make me hurt you. I'll hurt you. I'll hit you." She stated that she was too scared to scream. In our opinion, this testimony strongly supports the finding that the attack was forcible and against the will of the complainant. We reject the argument that the similarity of height and weight of complainant and defendant is sufficient evidence of the ability of complainant to engage in a test of physical strength with her attacker.

The issue of whether the complainant's testimony is credible is one for the jury. "[I]t is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of the disputed evidence or credibility of witnesses for that of the trier of fact who heard the evidence

presented and observed the demeanor of the witnesses." *People v. Montgomery* (1974), 19 Ill. App. 3d 206, 211, 311 N.E.2d 361, *appeal denied* (1974), 55 Ill. 2d 606, citing *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.

■■ On the issue of corroboration raised by defendant, it has been repeatedly held that where a complainant's testimony is clear and convincing, corroborating evidence is not necessary. (*People v. Secret* (1978), 72 Ill. 2d 371, 376, 381 N.E.2d 285.) A careful examination of the record persuades us that complainant's testimony was so clear and so convincing as to eliminate the necessity of corroboration. This is especially true in the instant case where defendant, after proper warnings, gave the police two conflicting statements concerning his activities on the night of the offense.

Furthermore, complainant's testimony was strongly corroborated by evidence of her immediate outcry to Cortina and Brown, their testimony that complainant was sobbing, emotionally upset and trying to describe her attacker to them while they were taking her to a telephone for her prompt complaint to the police, and the testimony of the doctor and nurse at Evanston Hospital.

Defendant raises the issue of consent. This attempted defense is completely negated by the strong testimony as above analyzed which impels to the conclusion that the act of intercourse was forcible and against the will of the complainant. We will add that the only evidence of consent in this record arises from the exculpatory and self-serving statement which defendant made to the police. As shown, the probative value of this statement is virtually destroyed by the contradictory statement defendant gave to the police that he was home with his people during the night in question. Considering the evidence on the narrow question of consent, it is clear from this record that the People proved lack of consent and that the act was by force and against the will of the complainant by strong, convincing and corroborated evidence beyond any reasonable doubt. Using the vernacular, we might readily describe the situation before us as involving the usual type of street rape. Considering all of the evidence in this record, we conclude that the evidence of guilt is not only strong beyond all reasonable doubt but is overwhelming in its force and effect.

## II.

In January of 1973, in other proceedings, defendant pleaded guilty to two rapes, two burglaries and one aggravated battery. The State proposed to offer evidence of the two convictions for rape. Defendant moved *in limine* to exclude this evidence. After full hearing, the trial court denied defendant's motion. Defendant raises two issues in this regard.

Defendant first contends these two "prior convictions were constitutionally invalid since based on involuntary and unintelligent guilty pleas which did not substantially comply with Supreme Court Rule 402 * * *." We find here a confusing attempt to combine two disparate legal theories. *Boykin v. Alabama* (1969), 395 U. S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709, exemplifies the constitutional requirement that a guilty plea must be voluntary and intelligent as demonstrated by the record. (See *People v. Reeves* (1971), 50 Ill. 2d 28, 30, 276 N.E.2d 318.) The requirement of substantial compliance by the trial court with Supreme Court Rule 402 is procedural only as opposed to constitutional. Compare *Reeves*, 50 Ill. 2d 28, 30, and *People v. Robinson* (1976), 63 Ill. 2d 141, 145, 345 N.E.2d 465.

■■ In the case before us, defendant is attempting a collateral attack upon his previous pleas of guilty. In this type of situation, defendant may not raise any point upon the failure of the trial court in the previous proceedings to comply substantially with Rule 402. To justify a collateral attack upon the previous pleas it is necessary to show a constitutional violation. This distinction appears clearly from all three of the cases cited and relied upon by defendant. In *Burgett v. Texas* (1967), 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258, and in *Loper v. Beto* (1972), 405 U.S. 473, 31 L. Ed. 2d 374, 92 S. Ct. 1014, the Supreme Court held that a conviction obtained in violation of defendant's constitutional right to counsel, as exemplified in *Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, could not be used for purposes of enhancement of punishment and impeachment respectively. Similarly in *United States v. Pricepaul* (9th Cir. 1976), 540 F.2d 417, the court of appeals held that where a guilty plea was entered in violation of *Boykin* principles, it could not be used for subsequent impeachment.

In the recent case of *United States v. Timmreck* (Docket No. 78-744, May 21, 1979), 47 U.S.L.W. 4577, defendant pleaded guilty to conspiracy to distribute controlled substances. He was sentenced and no appeal was taken. Two years later defendant made a collateral attack on the judgment and sentence on the ground that the trial court had violated Rule 11 of the Federal Rules of Criminal Procedure. The supreme court held that a collateral attack against the judgment could not be based upon a violation of the rule because such a violation was neither constitutional nor jurisdictional.

Applying these principles to the case before us, we conclude that the only contention open to defendant here is whether the two previous convictions on pleas of guilty violated the requirements of *Boykin*. The record before us shows that defendant was represented by counsel in the previous cases. The guilty pleas were entered after plea negotiations in

which the trial court took part. Defendant expressly told the court in the presence of his attorney that he understood the situation regarding a possible plea of guilty and that his attorney was acting with defendant's consent. The defendant told the trial court that he understood the proceedings at the preliminary hearing. We find a clear and complete compliance with the principles of *Boykin*.

Defendant also urges that the trial court erred with reference to the prejudicial effect that admission of evidence of the previous convictions would have had. These convictions involved commission of a felony and less than 10 years had elapsed since the dates thereof. The single remaining issue is whether the trial court determined in the exercise of discretion that the probative value of these prior convictions outweighed any unfair prejudice that their admission might create. *People v. Montgomery* (1971), 47 Ill. 2d 510, 515, 268 N.E.2d 695.

■■ This type of decision should be carefully weighed by the trial court. In addition the trial court must be given considerable latitude in its decision. (*People v. Lighthart* (1978), 62 Ill. App. 3d 720, 723-24, 379 N.E.2d 403, *appeal denied* (1978), 71 Ill. 2d 619, and cases there cited. In the instant case we find that the trial court carefully and exactly followed the guidelines set out in *Montgomery*. The trial court stated that "in all rape cases there are only two witnesses * * * to the alleged crime, the alleged rapist and the victim. Therefore, the question of credibility of each of those witnesses becomes of paramount importance * * *."

■■ Defendant further urges that by denying his motion *in limine* the trial court placed upon him an intolerable burden in that the possibility of prejudice prevented him from taking the stand in his own behalf. We cannot accept this argument. If we did, it would follow that "any time a defendant unsuccessfully moves prior to trial to suppress use of a prior conviction, the defendant on appeal would be able to defeat the trial judge's discretion, regardless of whether the ruling was legally correct, by arguing that it prevented him from testifying at trial." (*People v. Ganter* (1977), 56 Ill. App. 3d 316, 327, 371 N.E.2d 1072, *appeal denied* (1978), 71 Ill. 2d 604.) In our opinion, the ruling of the trial court was not the compelling cause for defendant's decision not to testify.

*People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058, which defendant cites and relies upon, is not applicable here. There, a conviction for rape was reversed by this court because, in ruling on a *Montgomery* issue, the trial court stated that the prior convictions tended to show the "violent nature or capability" of defendant. (*Wright*, 51 Ill. App. 3d 461, 463.) This statement evidenced an erroneous approach to the *Montgomery* problem. *State v. Santiago* (1971), 53 Haw. 254, 492 P.2d 657, also cited and relied upon by defendant, appears to us to be contrary

to the reasoning and the holding of *Montgomery*. This court is bound to follow *Montgomery*. We conclude that the motion *in limine* was properly decided by the trial court.

### III.

Defendant next contends that the trial court erred in admitting evidence of an alleged rape committed by him separate and distinct from the charge on trial. The State contends that this evidence was relevant to show *modus operandi* and common design.

The law of Illinois is clear and precise on this point. Evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. (*People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489; see also *People v. Romero* (1977), 66 Ill. 2d 325, 330, 362 N.E.2d 288.) Therefore, the evidence was proper if both crimes were " 'so nearly identical in method as to earmark them as the handiwork of the accused.' " *People v. Emmett* (1975), 34 Ill. App. 3d 167, 170, 340 N.E.2d 235, quoting McCormick, Evidence §190, at 449 (2d ed. 1972).

In *People v. Osborn* (1977), 53 Ill. App. 3d 312, 320, 368 N.E.2d 608, this court approached the same issue by analyzing three recent decisions. (*People v. Therriault* (1976), 42 Ill. App. 3d 876, 356 N.E.2d 999, *appeal denied* (1977), 65 Ill. 2d 579; *Emmett*; *People v. Scott* (1972), 4 Ill. App. 3d 279, 280 N.E.2d 715, *appeal denied* (1972), 52 Ill. 2d 596.) In *Osborn* we stated (53 Ill. App. 3d 312, 320-21):

> "In these cases, in upholding the admissibility of the evidence of other crimes we considered several common factors with no single element of similarity or combination of such elements emerging as essential to the competence of the testimony. However, these decisions reveal several significant points of comparison which were relied on to support the admissibility of the common design evidence.
>
> In *Therriault*, defendant gained entry to the victims' homes through kitchen windows. This was his common method of initial contact with both women. In *Emmett* and *Scott*, defendants followed eventual victims into elevators in their apartment buildings. In *Emmett*, defendant initiated conversations with both victims. (34 Ill. App. 3d 167, 170.) The type of force used against the victims was significant in *Emmett* where defendant, while holding a knife, put his hand over one victim's mouth and his arm across the other's neck. In *Scott*, defendant threatened and cut the complainant with her own knife. In the other offense he only threatened the woman with a knife. The location of the sexual attacks was commented on in *Therriault* and *Emmett* where the offenses occurred on the bed of each victim after defendant had

forced her to lie or sit thereon. Finally, the time span between offenses was held to be among the relevant circumstances in showing common design. In *Emmett* (34 Ill. App. 3d 167, 170), the crimes were 12 days apart and in *Therriault* one month intervened between the offenses. (42 Ill. App. 3d 876, 886.) In all three of these cases the challenged evidence of other crimes was held competent."

We held in *Osborn* that the factual similarities between the crime charged and the other offense were strong and persuasive and sufficient to make the evidence of the other offense relevant as proof of the existence of a common design and *modus operandi. (Osborn*, 53 Ill. App. 3d 312, 321.) We also noted in *Osborn* that, "The law of Illinois does not require that both offenses be identical." 53 Ill. App. 3d 312, 323, and cases there cited.

■■ A comparison of the other Northwestern student's testimony and the complainant's testimony reveals strong elements of factual similarity. Both victims were students at Northwestern University. Both were allegedly raped on campus while walking in an area south of the library. The attacks occurred within a few blocks of each other and within 2 weeks; both on Saturday evenings when there were few students in the vicinity. In both incidents the defendant approached the victims while riding a bicycle. He initiated both conversations with a vulgar remark. In neither instance was a weapon used, but in both cases the victim was told if she cooperated she would not get hurt. Each of the women was dragged by the arm to a place which was dark and below grade. The length of the attack was similar and in neither case was the victim subjected to any violent or sexual abuse, other than the rape. After the act was performed the defendant left immediately on his bicycle. In our opinion, the evidence of this other attack was properly admitted as proof of the existence of a common design or *modus operandi.* This evidence is extremely probative and strongly relevant to prove guilt. It shows a cunning and rather unusual scheme common to both cases and a common method of procedure. Evidence of a defendant's *modus operandi* may be relevant not only to the issue of who committed the crime, but also to the issue of whether a crime was actually committed. *People v. Middleton* (1976), 38 Ill. App. 3d 984, 990, 350 N.E.2d 223; see also *Osborn*, 53 Ill. App. 3d 312.

■■ Defendant also contends that *modus operandi* evidence is irrelevant and therefore not admissible in a case where consent is the issue. We reject this argument. It is the law of Illinois that any evidence which tends to prove a fact in issue is relevant. (*McDonald*, 62 Ill. 2d 448, 455.) In a sense, consent is an issue in every rape case tried in Illinois. The State is obliged to prove beyond reasonable doubt that the act was "against her will ° ° ° ." (Ill. Rev. Stat. 1975, ch. 38, par. 11—1(a).) This is equivalent

to proof of absence of consent. In Illinois, consent is not an affirmative defense to a charge of rape. Lack of consent is simply an element of the crime which must be proved by the State's evidence beyond reasonable doubt.

Defendant cites *Lovely v. United States* (4th Cir. 1948), 169 F. 2d 386, *Meeks v. State* (1968), 249 Ind. 659, 234 N.E.2d 629, and *State v. Sauter* (1951), 125 Mont. 109, 232 P.2d 731, in support of his contention. Defendant uses the quote, "The fact that one woman was raped, however, has no tendency to prove that another woman did not consent." (*Lovely*, 169 F.2d 386, 390.) We do not find any or all of these cases convincing. Defendant did not cite *Austin v. State* (1974), 262 Ind. 529, 319 N.E.2d 130, *cert. denied* (1975), 421 U.S. 1012, 44 L. Ed. 2d 680, 95 S. Ct. 2417. The Supreme Court of Indiana there considered *Lovely* and *Meeks* and declined to follow either case.

In addition, we note that defendant cites no Illinois authority in support of his contention. We do not believe that such authority exists in this jurisdiction. As shown by the cases cited by us, the Supreme Court of Illinois has broadly held that relevant evidence of other offenses is admissible for "any purpose" except where it is used only "to show propensity to commit a crime." (*McDonald*, 62 Ill. 2d 448, 455.) We are duty bound to follow the decisions of the Supreme Court of Illinois and of this court which approve the use of *modus operandi* evidence in rape cases. The evidence of the other offense in the instant case is both probative and pertinent in proving a common design. It was properly received by the trial court.

## IV.

During direct examination the prosecutor asked the complainant questions concerning the events leading up to the rape. She related that defendant had grabbed her arm and that she had given him a false address and told him that she lived with her parents. These last two statements were untrue and were made in an effort to dissuade defendant. She further described how defendant pulled her away from a lighted area toward a dark underground driveway. The prosecutor then asked:

> "Q. And what happened next?
> A. He was telling me to go down there, pulling kind of and I said, 'Please don't hurt me. I'm a virgin.' "

Defendant claims that this statement by the complainant "opened the door" to questions concerning her prior sexual experience. He argues that a witness who initiates matter on direct examination cannot avoid cross-examination on the same issue, citing *People v. Stevens* (1976), 40 Ill. App. 3d 303, 306-07, 352 N.E.2d 352, and *People v. Carbona* (1975),

27 Ill. App. 3d 988, 1007, 327 N.E.2d 546, *cert. denied* (1976), 424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114.

■■ In our opinion, the issue of the complainant's prior sexual activity was not entered into during direct examination. In denying defendant's request to pursue this line of questioning, the trial court noted that the complainant's statement to the defendant merely showed that she was trying to talk defendant out of attacking her. The trial court stated, "She had a reason to say that to him whether it was true or not." We agree with this analysis by the trial court. Complainant told defendant many things during the course of the attack. Whether the statements themselves were actually true is not relevant to the issues in the instant case. The testimony of the complainant here was important only as a recital of what she told defendant; not as an independent factual statement.

■■ It must be remembered that "[t]he latitude to be allowed in the cross-examination of a witness rests largely in the discretion of the trial court, and it is only in a case of an abuse of such discretion resulting in prejudice to a defendant that a reviewing court will interfere." (*People v. Bridgeforth* (1972), 51 Ill. 2d 52, 65, 281 N.E.2d 617, *appeal dismissed* (1972), 409 U.S. 811, 34 L. Ed. 2d 66, 93 S. Ct. 100.) The trial court informed defendant that he could present evidence concerning the complainant's reputation, but he would not be permitted to introduce evidence of specific acts. This ruling was correct under the law of Illinois. (See *People v. Collins* (1962), 25 Ill. 2d 605, 611, 186 N.E.2d 30, *cert. denied* (1963), 373 U.S. 942, 10 L. Ed. 2d 697, 83 S. Ct. 1551; *People v. Eilers* (1974), 18 Ill. App. 3d 213, 217, 309 N.E.2d 627.) Defendant did not present any evidence of complainant's reputation, nor did he make an offer of proof as to any such evidence.

## V.

Prior to trial, the State provided defense counsel with a preliminary hearing transcript. This reflected that the complainant testified defendant said to her, "How about getting on my bike?" and later said, "How about you getting on for five minutes?" At trial, on direct examination, complainant testified that defendant said, "Let me get on you for five minutes." Defendant contends that his counsel was prepared to impeach the complainant on this point and had structured his cross-examination accordingly. As defense counsel commenced the foundation for impeachment, the prosecution objected and said before the jury:

> "Judge, there's an objection by the State. We have reason to believe that portions of this transcript are incorrect and I would like to discuss this matter with the Court and with Counsel, so there will be no mistake an error was made."

At a sidebar conference the prosecutor informed the trial court and

defense counsel that he had learned the previous evening that there were several mistakes in the transcript. After listening to a tape of the proceedings, the court reporter determined that the first two statements above were incorrect, and that, in fact, complainant had testified that defendant said, "How about letting me get on you for five minutes?" This fact was confirmed the following morning when the trial judge and counsel for both sides listened to the tape.

Defendant urges that the State's Attorney had the duty to advise defense counsel of the error as soon as he himself became aware of it. The defendant thus maintains that he was denied meaningful confrontation.

Clearly the spirit, if not the express language, of Supreme Court Rules 412 and 415 require a prosecutor to disclose to defense counsel any errors in documents that have been tendered to the defense as soon as the prosecution has such knowledge. The appropriate sanctions to be imposed for noncompliance with these rules are stated in Supreme Court Rule 415(g)(i) (58 Ill. 2d R. 415(g)(i)):

> "* * * the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances."

Here the trial court, in its discretion, informed the jury:

> "* * * I don't want you to feel that there was any reflection on the way Counsel for the Defense was conducting his cross-examination. He was about to raise a very proper question and it was based on a transcript which he had no reason to believe was incorrect. And therefore, there should be no inference drawn whatsoever, that would reflect on any intent at all on the part of the Defense to make an improper question."

■■ In our opinion, this was a sound exercise of judicial discretion. We fail to see any violation of the right to confrontation or due process of law. We also do not find, and defendant fails to demonstrate, any prejudice which occurred by the prosecutor's failure to inform defense counsel of the error. In fact the complainant was thoroughly and ably cross-examined. Absent a showing of prejudice, we will not interfere with the exercise of the trial court's discretion. See *People v. Musgray* (1976), 37 Ill. App. 3d 48, 51, 344 N.E.2d 708.

## VI.

Subsequent to the rape of the other Northwestern student, a police artist rendered a composite drawing of the attacker based on her description. The student stated that she was fairly satisfied with the drawing except that the face of her attacker was thinner and his hair had more curls.

Defendant contends that the composite was not similar to his appearance nor was it similar to the composite drawn at the direction of the complainant. Therefore, defendant reasons that he should have been allowed to introduce the composite drawn at the direction of the other Northwestern student for the purpose of discrediting her testimony.

■■ ■ The law is clear that "[a] witness may be cross-examined as to prior inconsistent statements, but the inconsistency must be substantial and relate to a material and not a collateral or irrelevant matter." (*People v. Curtis* (1977), 48 Ill. App. 3d 375, 386, 362 N.E.2d 1319.) The test of whether the prior statement is sufficiently inconsistent to permit its utilization is that the "statement must have a reasonable tendency to discredit the direct testimony on a material matter." (*Curtis*, 48 Ill. App. 3d 375, 386.) Defendant argues that the witness adopted the composite drawing. We cannot agree. The witness had declared from the time the drawing was made that it was an inaccurate representation. We, therefore, fail to see how it would be probative with respect to impeaching the description given by the witness at trial and her in-court identification. In order for the composite sketch to be used for impeachment purposes, it must have been accepted by the witness as substantially accurate. It was not. The trial court properly ruled it inadmissible for impeachment purposes.

## VII.

Defendant next contends that during trial the court improperly refused to determine whether the jury was prejudiced by the remarks of a bailiff. A court bailiff allegedly made a remark to members of a jury in a prior case after they had found a defendant not guilty. This remark concerned the other defendant. Four members of that other jury were sitting on the jury in the instant case. This information did not come to defendant's attention until the middle of the trial. He requested the court to question these four jurors to determine if the remarks had prejudiced them in any way. The court refused.

It must be stressed that the alleged remarks occurred before the jury was selected in the instant case and concerned someone other than the defendant herein. During *voir dire* the jurors who had served on the prior case were specifically questioned by both parties as to whether anything about the prior criminal trial would, in any way, influence their decision in the instant case. The prospective jurors all agreed that the instant case was separate and distinct from the previous case and that their prior jury service would not cause them to be biased. With this questioning the duty of the trial court to determine prejudice was fulfilled.

■■ The courts of Illinois have held that "a jury verdict will not be set aside where it is apparent that no injury or prejudice resulted from a

communication to the jury either by the court or third persons outside the presence of the defendant." (*People v. Mills* (1968), 40 Ill. 2d 4, 14, 237 N.E.2d 697; *People v. Peters* (1975), 33 Ill. App. 3d 296, 337 N.E.2d 725.) The cases cited and relied upon by defendant all deal with remarks or publicity concerning the defendant who was then on trial. All of these remarks or publicity occurred during the progress of the trial. The cases are therefore not applicable to the instant case. (*United States v. Solomon* (7th Cir. 1970), 422 F.2d 1110; *United States v. Accardo* (7th Cir. 1962), 298 F.2d 133; *People v. Pozzi* (1976), 42 Ill. App. 3d 537, 356 N.E.2d 186; *People v. Cox* (1966), 74 Ill. App. 2d 342, 220 N.E.2d 7.) The trial court properly refused further questioning of the jurors.

## VIII.

During cross-examination of the complainant, the trial court allowed defense counsel to use an unauthenticated model of Northwestern University Campus for the purpose of giving the jury a general idea of the area. The model had not been built to scale and was not accurate, and the jury was so informed. Defense counsel then asked the complainant if she felt it was a "reasonably accurate representation." The State objected on the basis that defense counsel was trying to authenticate the model through the testimony of the complainant. The trial court sustained the objection stating that the complainant seemed to be having some trouble with the model. Defense counsel agreed. The trial court then said, "If this model is being used for trickery or to trip up a witness, then we will not allow it." Defense counsel moved for a mistrial. The trial court denied the motion but allowed defense counsel to continue to use the model in cross-examination.

Defendant contends that the trial court's remark impugned his counsel in the eyes of the jury. The State submits that the remark was conditional and did not personally impugn defense counsel. We agree. The trial court did not say that defense counsel was trying to trick or trip up the witness. It stated that if the model was used for that purpose, it would not be allowed. In fact, thereafter the trial court permitted the use of the model by defense counsel.

Moreover, there is some substance to the State's assertion that the remark was provoked. After the jury was told that the model was unauthenticated, not to scale, and inaccurate, defense counsel proceeded to ask the complainant if the model was a "reasonably accurate representation." "Statements which express impatience or hostility toward defense counsel do not amount to reversible error where they are either invited or provoked by such counsel." *People v. Beasley* (1977), 54 Ill. App. 3d 109, 116, 369 N.E.2d 260, *appeal denied* (1977), 65 Ill. 2d 578;

*People v. Malcom* (1973), 14 Ill. App. 3d 378, 302 N.E.2d 352, *appeal denied* (1973), 54 Ill. 2d 598.

■■ Additionally, the record is clear that the above remark was an isolated instance. The trial court conducted itself throughout the trial in a manner above reproach. It extended every courtesy to the defense and never exhibited hostility or impatience. Thus, we do not believe that this one remark deprived defendant of a fair trial. See *Beasley*, 54 Ill. App. 3d 109, 116.

Furthermore, the trial court gave the jury Illinois Pattern Jury Instructions, Criminal, No. 1.01[8] (1968):

> "Neither by these instructions nor by any ruling or remarks which I have made to you do I mean to indicate any opinion as to the facts or as to what your verdict should be."

This is the type of situation that the above instruction is designed to and does cure. We find that defendant was not prejudiced by this one isolated remark. See *People v. Johnson* (1975), 26 Ill. App. 3d 1000, 1006, 326 N.E.2d 69, *appeal denied* (1975), 58 Ill. 2d 594.

### IX.

In view of our disposition of the above issues, we need not consider defendant's remaining issue concerning cumulative errors.

For these reasons the judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and CAMPBELL, JJ., concur.